[No. B223730. Second Dist., Div. Four. Nov. 29, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
JONATHAN VELAZQUEZ, Defendant and Appellant.

COUNSEL

Gideon Margolis, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Jaime L. Fuster and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WILLHITE, J.**—The victim in this case, in which defendant Jonathan Velazquez was charged with three counts of criminal threats (Pen. Code,[1] § 422) and three counts of dissuading a witness (§ 136.1, subd. (b)(2)) for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(B), (4)), failed to appear to testify during the prosecution's case-in-chief. Although there was a witness to the first instance in which defendant threatened the victim and attempted to dissuade her from assisting in the prosecution of his fellow gang members, and that witness testified in the prosecution's case-in-chief, there was no witness to testify as to the other instances until the victim (who was not under subpoena) came forward to testify in rebuttal—after the trial court denied defendant's motion for acquittal on the counts related to those instances. Defendant was convicted on all counts and appeals on the ground (among others) that the trial court erred by denying his motion for acquittal. Because there was insufficient evidence at the time of defendant's motion to support the charges related to those other incidents, we are compelled under Supreme Court precedent to conclude that the trial court erred by denying defendant's motion for acquittal and that the judgment as to those counts must be reversed. In addition, as defendant contends and the Attorney

---

[1] Further undesignated statutory references are to the Penal Code.

General concedes, the trial court erred in imposing a 10-year gang enhancement rather than a five-year enhancement, and failed to properly calculate defendant's presentence custody and conduct credits. Therefore, we remand the matter for resentencing.

## BACKGROUND

Defendant was charged by information with three counts of criminal threats (§ 422) and three counts of dissuading a witness from prosecuting a crime (§ 136.1, subd. (b)(2)); the victim in each count was Debbie Porter.[2] Counts 1 and 2 involved an incident that took place on March 3, 2009; counts 3 and 4 involved an incident on March 9, 2009; and counts 5 and 6 involved an incident on March 10, 2009. The information also included gang allegations under section 186.22, subdivision (b)(1)(B), as to the criminal threats offenses (counts 1, 3, and 5), and gang allegations under section 186.22, subdivision (b)(4) as to the dissuading a witness offenses (counts 2, 4, and 6), as well as a prior prison term allegation under section 667.5, subdivision (b), as to all counts.

The case was tried before a jury. Jury selection took up the entire first day of trial. The following day, both sides made opening statements and the prosecution presented three witnesses: the police detective who was a witness to the first incident and investigated the other incidents, the police officer who arrested defendant, and a police officer who testified as an expert on gangs.

Detective Boris Oliva testified that he was asked to assist another detective in an investigation involving criminal threats against Porter made by Sonia Rojas, a member of the Rancho San Pedro gang. He explained that two other members of that gang, Rommel Lennigan and Michael Sambrano, had been arrested on March 1, 2009, for putting a gun to Porter's head and for burglary. Porter came into the police station on March 3, nervous and "very shaken up," and reported threats made against her by Rojas.[3] During Detective Oliva's interview of Porter, Porter said that she was also being threatened by another Rancho San Pedro gang member known as Turtle. Porter identified Turtle from a photographic lineup; the person she identified was defendant.

While Porter was talking to Detective Oliva, she received a couple of phone calls and became very agitated. She told Detective Oliva that Turtle

---

[2] The information also alleged three other counts, unrelated to the first six counts, involving a different victim. Those counts were dismissed on the prosecution's motion on the first day of trial.

[3] Rojas was convicted of witness intimidation (§ 136.1, subd. (b)(2)) with a gang allegation (§ 186.22, subd. (b)(1)(C)) in a separate proceeding.

was calling her again, and showed him the phone number: 424-224-1502.[4] Porter did not answer those calls, and they went to voice mail. Detective Oliva asked Porter to access her voice mail. He listened to a message, which Porter said was from Turtle. He heard the caller say: "Call me. I have something important to talk to you about." Detective Oliva asked Porter to call Turtle back on speakerphone. When Porter called back, the detective heard the person who answered identify himself as Turtle. Turtle said that he had spoken to his "homie" that day (Mar. 3), and that his homie had gone to an arraignment hearing and was looking at 27 years in prison. He told Porter to go to 77 jail (i.e., the 77th Street Division) and drop all the charges against his homie. He said that if she dropped the charges, nothing would happen to her. Porter appeared to be extremely worried during the call. Detective Oliva later determined that Sambrano and Lennigan were arraigned on March 3 on charges related to the March 1 incident with Porter.

Detective Oliva also testified about a followup visit with Porter he made on March 11, 12, or 13 at Porter's daughter's home, where Porter was staying because she was too scared to go back to her house. The prosecutor asked Detective Oliva, "[W]hen you met with [Porter] at her daughter's place, did she inform you as to any additional threats made to her by Turtle?" Detective Oliva answered, "Yes, sir, she did." But when Detective Oliva started to testify about what Porter told him, defense counsel objected on hearsay grounds and that objection was sustained. Detective Oliva then testified that Porter showed him her cell phone, and Detective Oliva observed several calls from the same number as the number Porter called in Detective Oliva's presence on March 3 in response to Turtle's voice mail. Detective Oliva observed there were at least two calls on March 9 and at least three calls on March 10. Detective Oliva said that, during his visit, Porter "was a wreck essentially" and was still very scared. He said he told Porter that he would relocate her if she wanted him to, but she found an apartment on her own outside of San Pedro.

Police Officer Robert Castruita testified after Detective Oliva about the circumstances of defendant's arrest. His testimony was followed by Officer Andrew Gonzalez, who testified as an expert on criminal street gangs and specifically the Rancho San Pedro gang. Officer Gonzalez testified that defendant was a member of the Rancho San Pedro gang, and that the primary activities of the gang included witness intimidation and criminal threats. The prosecutor set forth a hypothetical scenario based upon the facts of this case, and asked Officer Gonzalez whether, in his opinion, the threats and intimidation were for the benefit of, in association with, or at the direction of the Rancho San Pedro gang. Officer Gonzalez opined that they were.

---

[4] The subscriber to that number was Janet Balanzar, defendant's girlfriend.

Officer Gonzalez finished his testimony at 2:45 p.m., at which time the court and counsel held a discussion off the record. Following that discussion, the proceedings were continued to the following morning. The next morning, which was a Friday, the prosecutor told the court that, despite Detective Oliva's best efforts, he could not locate Porter. He submitted a motion under Evidence Code sections 240 and 1290, asking for a hearing to show reasonable due diligence in attempting to procure Porter's attendance, in order to have Porter declared to be unavailable as a witness and allow her testimony at the preliminary hearing to be admitted. The court granted the hearing, at which Detective Oliva testified.

Detective Oliva testified that Porter was at the courthouse, in the District Attorney's office, during jury selection. She received a phone call in the midafternoon, and told Detective Oliva that she was just informed that her "Dad" had passed away.[5] She was very distraught, and asked to be excused so she could be with her family. Another assistant district attorney (not the prosecutor, who was conducting voir dire) went into the courtroom while Porter and Detective Oliva stayed in the hallway. When that assistant district attorney came back out, she told Porter she would be excused, but asked her to come back at 8:30 the next morning. Porter agreed. When she did not appear the next morning, Detective Oliva directed two detectives to try to locate her at the addresses he had for her. The detectives made several attempts to find her, but she was not at any of those addresses. Detective Oliva also tried to contact Porter on her cell phone numerous times, but could not reach her. He was able to contact Porter's parents, her son, and one of her daughters. They told him that when Porter is very depressed, as she was at that time, she becomes almost a recluse; they said that they had tried to contact her but were unsuccessful. Detective Oliva testified that, up to the time of the hearing, he and his colleagues continued to make additional efforts to find Porter, including going to the apartment of the gentleman who had passed away, but they still were unable to locate her.

Based on Detective Oliva's testimony, the prosecutor asked that Porter be deemed unavailable, or alternatively, that the court grant a continuance. The court said it would not consider a continuance, because the prosecutor had represented that he had no idea where Porter was, and he could not say how long it would take to find her. Turning to the issue whether Porter was unavailable, the court asked whether Porter was ever under subpoena or ordered by the court to appear. The prosecutor admitted that she was not.

---

[5] It turns out that the man she called "Dad" was not her father, but was someone with whom she was very close.

Based on that admission, the court found that, under Evidence Code section 240, subdivision (b), she could not be deemed to be unavailable as a witness.

After making its ruling, the court asked, outside the presence of the jury, if the prosecutor had any other witnesses. The prosecutor indicated that he did not, and that the People would rest.[6] The court then asked defense counsel if he was going to call any witnesses. Although counsel said he was not, defendant said he wanted to testify. The jury returned to the courtroom, and the court asked the prosecutor, "People rest?" to which the prosecutor replied, "I believe the court has deemed that the People have rested, Your Honor." The court asked the prosecutor whether he had any more witnesses, and the prosecutor said, "Not at this time, Your Honor." Defense counsel then called defendant to testify.

Defendant testified that Porter was a friend of his, and that he had had several phone conversations with her since September 2008. He said that Porter called him after the March 1, 2009 incident and asked him for advice about what to do. He testified that he told her to "stay away from these people" because she would not want to get in trouble with them. He said that he never threatened her, did not threaten to kill her, and did not tell her to drop the charges against any gang member. He admitted that he was a member of the Rancho San Pedro gang when he was younger, and that he had a "Rancho" tattoo across his chest and an "RSP" tattoo on his right forearm, but he said he had not had any contact with gang members since 2005.

After defendant finished testifying, the court asked the prosecutor if there were any rebuttal witnesses. The prosecutor asked for a 10-minute recess so he could make a phone call. After the recess, the prosecutor told the court that he had reached Porter's daughter, who confirmed Porter's location, and that Detective Oliva was heading to that address to pick Porter up and bring her to court; Detective Oliva believed they would be there in one hour, which would be 4:00 p.m. The prosecutor asked the court to ask the jury to wait until 4:00 p.m. or, in the alternative, allow him to call Porter as his rebuttal witness on Monday morning, i.e., the next court day. Before making its decision, the court granted defense counsel's request to make a motion. Defense counsel then moved for acquittal under section 1118.1 on counts 3 through 6 (i.e., all of the counts except those involving the Mar. 3 phone call) on the ground of insufficiency of the evidence.

---

[6] Although the reporter's transcript indicates that defense counsel said he had no other witnesses to call, it is clear from the context that it was the prosecutor who answered the court's question.

After determining that a majority of the jurors preferred to come back on Monday rather than wait for the witness, the court released them for the weekend and held a hearing on defendant's motion. The court asked the court reporter to read back the portion of Detective Oliva's testimony regarding his visit with Porter at her daughter's home. The court concluded that Detective Oliva's testimony that Porter indicated there were threatening phone calls, coupled with his testimony regarding her demeanor and his observations of the call log on her phone, constituted sufficient circumstantial evidence to support all counts, and therefore the court denied the motion to acquit.

Porter appeared and testified on Monday morning. She testified that, at 12:30 a.m. on the morning of March 1, 2009, she was at a neighbor's house when two men came in, put a gun to her head, and forced her to go to her house, a few buildings away. They told her she had two minutes to go inside and bring out her gun. She went inside, went into the bathroom, and called 911. The police came, caught the men in a nearby alley, and she identified them as the perpetrators. Within hours, she was being threatened by people banging on her door.

One of the people threatening her was defendant. She knew defendant from the neighborhood, and had had a few contacts with him before the March 1 incident; she had asked him for help in getting some members of the Rancho San Pedro gang to stop harassing her son. She had asked for his help at that time because he had told her that he was in the Rancho San Pedro gang, and said "[h]e felt like he was running the neighborhood."

Porter testified that on March 3, 2009, she went to the police station for help because defendant kept calling and threatening her. While she was there, she got a call from him that she let go to voice mail. She listened to the voice mail and called defendant back on speakerphone in Detective Oliva's presence. Defendant identified himself and said that his homeboys went to court, and that one of them was looking at 27 years. He told her to go to the 77th Division and drop the charges, or she was going to get smoked (which she understood to mean that she would be killed). She considered that a threat, and she was scared for her life.

Porter continued to get calls from defendant's number over the next week, but she did not answer them and did not contact defendant. She did answer a call from defendant on March 9, however, because the number was blocked. Defendant told her during that call to go to the police department and drop the charges against his homeboys or she would be dead. He called again the next day, on March 10, and again told her to drop the charges or she would

be smoked, or dead, saying, "Nobody messes with the Ranchos." She was scared she was going to be killed. She reported these threats to Detective Oliva when he came to her daughter's house, where she was staying, sometime around March 11 or 12.

After Porter testified, the prosecution rested, and the case went to the jury.[7] The jury found defendant guilty on all counts and found the gang allegations to be true. The trial court found the prior prison term allegation to be true, and sentenced defendant to life in prison with a minimum term of 22 years, computed as follows: on each of the criminal threat counts, a high term of three years plus a consecutive 10 years under section 186.22, subdivision (b)(1)(C), all of which were stayed under section 654; on each of the dissuading a witness counts, life with a minimum term of seven years, served consecutively; and one additional year on the prior prison term allegation. The court awarded defendant 287 days of actual presentence custody credit. Defendant timely filed a notice of appeal from the judgment.

## DISCUSSION

Defendant contends on appeal that (1) the convictions on counts 3 through 6 must be reversed because the trial court erroneously denied his motion for acquittal on the ground of insufficient evidence; (2) the convictions on counts 2, 4, and 6 (the dissuading a witness counts) must be reversed because section 136.1, subdivision (b) is directed at prearrest efforts to prevent a crime from being reported, but the incidents at issue took place after Sambrano and Lennigan had been arrested; (3) the trial court erred by imposing a 10-year gang enhancement in counts 1, 3, and 5 because the crime of criminal threats is not a violent felony subject to a 10-year enhancement under section 186.22, subdivision (b)(1)(C); and (4) the trial court miscalculated his presentence actual custody credit and failed to award him presentence local conduct credit.

### A.  *Denial of Defendant's Motion for Acquittal*

Section 1118.1 provides in relevant part: "In a case tried before a jury, the court on motion of the defendant or on its own motion, at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on

---

[7] Defendant waived his right to a jury trial on the prior prison term allegation.

appeal." In this case, as noted, defendant brought his motion for acquittal on counts 3 through 6 after the defense rested, and the trial court denied the motion. He challenges that ruling on appeal, arguing that the evidence then before the court was insufficient to show he made criminal threats or attempted to dissuade a witness on March 9 or 10, 2009. We agree.

The Supreme Court summarized in *People v. Stevens* (2007) 41 Cal.4th 182 [59 Cal.Rptr.3d 196, 158 P.3d 763] the standards to be applied by the trial court in deciding a motion made under section 1118.1 and by the appellate court in reviewing the trial court's ruling. The court explained: " 'The standard applied by a trial court in ruling upon a motion for judgment of acquittal pursuant to section 1118.1 is the same as the standard applied by an appellate court in reviewing the sufficiency of the evidence to support a conviction, that is, "whether from the evidence, including all reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged." ' [Citation.] 'The purpose of a motion under section 1118.1 is to weed out as soon as possible those few instances in which the prosecution fails to make even a prima facie case.' [Citations.] The question 'is simply whether the prosecution has presented sufficient evidence to present the matter to the jury for its determination.' [Citation.] The sufficiency of the evidence is tested at the point the motion is made. [Citations.] The question is one of law, subject to independent review. [Citation.]" (41 Cal.4th at p. 200.)

The counts at issue here allege that on March 9, 2009, and on March 10, 2009, defendant made criminal threats to Porter and attempted to dissuade her from prosecuting a crime. To prove the crime of criminal threat, the prosecution must establish the following elements: "(1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat—which may be 'made verbally, in writing, or by means of an electronic communication device'—was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances." (*People v. Toledo* (2001) 26 Cal.4th 221, 227–228 [109 Cal.Rptr.2d 315, 26 P.3d 1051].) To prove the crime of dissuading a witness from prosecuting a crime in violation of

section 136.1, subdivision (b)(2), the prosecution must establish that the defendant, with the specific intent to do so, dissuaded or attempted to dissuade a witness or victim from "[c]ausing a complaint, indictment, information, probation or parole violation to be sought and prosecuted, and assisting in the prosecution thereof." (§ 136.1, subd. (b)(2); see also *People v. Ford* (1983) 145 Cal.App.3d 985, 989–990 [193 Cal.Rptr. 684] [specific intent].)

At the time of defendant's motion for acquittal in the present case, the only evidence before the court regarding what occurred between defendant and Porter on March 9 and 10 was Detective Oliva's affirmative response to the prosecutor's question, "[W]hen you met with [Porter] at her daughter's place, did she inform you as to any additional threats made to her by Turtle?" and his testimony that he observed the call log on Porter's phone and saw there had been calls made to her on those dates from the number defendant had used on March 3 to threaten her and attempt to dissuade her from prosecuting his fellow gang members. At best, the trier of fact could infer from this evidence that defendant called Porter's phone on those dates. It is insufficient, by itself, to establish that on those dates "defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person' " (*People v. Toledo, supra,* 26 Cal.4th at pp. 227–228), or that he attempted to dissuade Porter from "[c]ausing a complaint . . . to be sought and prosecuted, and assisting in the prosecution thereof" (§ 136.1, subd. (b)(2)).

The Attorney General argues, however, that this evidence was sufficient to support the counts at issue because (1) section 136.1 is a "continuous course of conduct" offense, so the trial court could also consider the evidence regarding defendant's March 3 call with Porter; (2) defendant had already threatened to kill Porter on March 3, and Detective Oliva testified that Porter was "a wreck" when he visited her on March 11, 12, or 13, when she informed him of "additional threats," so the court reasonably could infer that defendant also threatened to kill her on March 9 and 10; and (3) the court could conclude that defendant's testimony in which he denied threatening or trying to dissuade Porter was false, and thus infer that the crimes he denied committing had in fact occurred. We are not persuaded.

The Attorney General's first argument fails because defendant was charged with three separate counts, not a single count encompassing numerous threats made over two or three months as was the case in *People v. Salvato* (1991) 234 Cal.App.3d 872 [285 Cal.Rptr. 837], the case upon which the Attorney General relies. Having chosen to charge defendant with dissuading a witness on three separate days, in three separate counts, the prosecution had the burden to show that defendant attempted to dissuade Porter on each of those days.

The Attorney General's second argument overlooks that section 422 requires more than that "threats" were made. To establish the crime, the prosecution must show that the threats specifically involved the commission of a crime that will result in death or great bodily injury. (*People v. Toledo, supra*, 26 Cal.4th at pp. 227–228.) The prosecution in its case-in-chief relied solely on an inference to prove this element, i.e., that because defendant threatened to kill her on March 3 (the proved fact), the "additional threats" he made on March 9 and 10 were threats to kill her (the presumed fact). But without evidence tending to show the content of the additional threats, a trier of fact could not reasonably conclude that because defendant threatened to kill Porter on March 3, he threatened to kill her when he called her on March 9 and 10.

██ The last inference the Attorney General posits—i.e., that the court could infer from its conclusion that defendant's testimony denying wrongdoing was false that defendant actually committed the crimes—is unpersuasive. The prosecution bears the burden to prove each element of the crimes charged. (*People v. Belton* (1979) 23 Cal.3d 516, 520 [153 Cal.Rptr. 195, 591 P.2d 485].) That burden is not met through mere disbelief of defendant's denial that he committed the crimes. "A reasonable inference ' "may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work." ' [Citation.] It must logically flow from other facts established in the action." (*People v. Austin* (1994) 23 Cal.App.4th 1596, 1604 [28 Cal.Rptr.2d 885], disapproved on other grounds in *People v. Palmer* (2001) 24 Cal.4th 856, 861–867 [103 Cal.Rptr.2d 13, 15 P.3d 234], quoting *People v. Morris* (1988) 46 Cal.3d 1, 21 [249 Cal.Rptr. 119, 756 P.2d 843].) Disbelief of defendant's testimony, without more, does not constitute "other facts" from which logically flows the conclusion, beyond a reasonable doubt, that defendant did that which he denied doing.

██ In concluding that the trial court erred by denying defendant's motion for acquittal because the evidence before the trial court at the time the motion was made was insufficient to support a conviction on counts 3 through 6, we acknowledge that the prosecution's evidence in rebuttal provided the missing evidence, and thus would support the convictions. We are compelled, however, to reverse the convictions, based upon *People v. Belton, supra*, 23 Cal.3d 516. In that case, the only evidence presented during the prosecution's case-in-chief connecting the defendant to the charged crime was testimony by a peace officer regarding an admission by the defendant's accomplice that implicated defendant. (*Id.* at p. 519.) The defendant moved for a judgment of acquittal at the close of the case-in-chief, and the trial court denied the motion. (*Ibid.*) After the defendant rested, the prosecution presented evidence in rebuttal corroborating the accomplice's statement. (*Id.* at p. 543 (dis. opn. of Clark, J.).) The Supreme Court held that the defendant's motion for acquittal was improperly denied because the prosecution failed to present a

prima facie case during its case-in-chief, and concluded that reversal of the judgment was required. So it is in this case. Accordingly, we reverse the judgment as to counts 3 through 6.

B.   *Sufficiency of Evidence to Support Remaining Dissuading a Witness Count*

Defendant contends there was insufficient evidence to support his convictions on the dissuading a witness counts because section 136.1, subdivision (b) applies only to prearrest efforts to dissuade a witness from reporting a crime, rather than attempts to persuade a witness to drop charges after the perpetrators have been arrested, as in this case. We address this argument as to count 2, the only dissuading a witness count that remains, and find it lacks merit.

In making this argument, defendant relies upon *People v. Fernandez* (2003) 106 Cal.App.4th 943 [131 Cal.Rptr.2d 358]. In that case, the defendant asked the victim to testify falsely at his preliminary hearing. (*Id.* at p. 946.) The defendant was later charged with, and convicted of, attempting to dissuade a witness under section 136.1, subdivision (b)(1). (106 Cal.App.4th at p. 946.) Division Six of this Appellate District reversed the conviction, concluding that section 136.1, subdivision (b)(1) applies only to efforts to prevent a witness from reporting a crime, and does not apply to efforts to influence a witness' testimony, which is addressed in section 137. (106 Cal.App.4th at pp. 947–952.) In reaching this conclusion, the appellate court stated that "section 136.1, subdivision (b) punishes a defendant's pre-arrest efforts to prevent a crime from being reported to the authorities." (*Id.* at p. 950.)

Defendant's reliance on *People v. Fernandez* is misplaced. The issue in that case was whether subdivision (b)(1) of section 136.1 applied to an attempt to influence a witness' testimony, not, as in this case, whether subdivision (b)(2) applies to an attempt to influence a victim to drop the charges against a perpetrator.[8] To the extent the court in *Fernandez* intended to include subdivision (b)(2) in its statement that subdivision (b) applies only to prearrest attempts to dissuade the reporting of a crime, the statement is dictum, with which we respectfully disagree.

■   Unlike section 136.1, subdivision (b)(1), which makes it a crime to attempt to dissuade a crime victim from "[m]aking any report of that victimization to any peace officer . . . or to any judge," subdivision (b)(2) makes it a crime to attempt to dissuade a victim or witness from "[c]ausing a complaint, indictment, information, probation or parole violation to be sought

---

[8] Defendant here was charged with, and convicted of, a violation of section 136.1, subdivision (b)(2).

and prosecuted, and assisting in the prosecution thereof." Subdivision (b)(2) clearly encompasses more than prearrest efforts to dissuade, inasmuch as it includes attempts to dissuade a victim from causing a complaint or information to be prosecuted or assisting in that prosecution. The evidence in this case shows that defendant threatened Porter in an attempt to persuade her to drop the charges against his fellow gang members. This is sufficient evidence to support a conviction under section 136.1, subdivision (b)(2), for attempting to dissuade a victim from causing a complaint or information to be prosecuted. Therefore the judgment as to count 2 is affirmed.

### C. *The Trial Court Imposed the Wrong Gang Enhancement in Count 1*

Defendant argues the trial court erred by imposing a 10-year gang enhancement under section 186.22, subdivision (b)(1)(C) in the criminal threats counts, because that subdivision applies only when the felony conviction at issue is a "violent felony," and the crime of criminal threats is not a "violent felony." Defendant contends the enhancement must be stricken. The Attorney General concedes that the trial court was not authorized to impose a 10-year enhancement under that subdivision, but argues that the court could impose a five-year enhancement under section 186.22, subdivision (b)(1)(B), which applies to "serious" felonies.[9]

█ The Attorney General is correct. Section 186.22, subdivision (b)(1)(B) provides that a five-year sentence enhancement must be imposed if a defendant is convicted of committing "a serious felony, as defined in subdivision (c) of Section 1192.7." Section 1192.7, subdivision (c)(38) lists as a "serious felony" "criminal threats, in violation of Section 422." Therefore, on remand, the trial court is directed to strike the 10-year gang enhancement for count 1 and impose a five-year enhancement under section 186.22, subdivision (b)(1)(B).

### D. *Defendant's Presentence Custody Credit Must Be Recalculated*

Defendant argues the trial court miscalculated his actual custody credit (which should be 288 days, rather than the 287 days awarded), and failed to consider whether he was entitled to local conduct credit under section 4019 or section 2933.1. He contends the matter must be remanded to recalculate his custody credit. The Attorney General concedes both points. We therefore remand the matter to the trial court to correct the actual custody credit by awarding an additional day, and to calculate the conduct credit, if any, to which defendant is entitled.

---

[9] The jury found the gang allegation to be true under both section 186.22, subdivision (b)(1)(B) and (C).

## DISPOSITION

The judgment as to counts 3, 4, 5, and 6 is reversed, and the trial court is directed to enter a judgment of acquittal on those counts. The matter is remanded for resentencing on count 1 and recalculation of defendant's presentence custody credit.

Epstein, P. J., and Manella, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 29, 2012, S199252.