Filed 4/2/14  P. v. Thompson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ROBERT WAYNE THOMPSON,<br><br>Defendant and Appellant. | C071910<br><br>(Super. Ct. Nos.<br>MCYKCRBF11194,<br>MCYKCRF10570) |

A jury found defendant Robert Wayne Thompson guilty of corporal injury to a cohabitant (Pen. Code, § 273.5, subd (a); further statutory references are to the Penal Code unless otherwise indicated; count 1), assault by force likely to cause great bodily injury (§ 245, subd. (a)(1); count 2), battery with serious bodily injury (§ 243, subd. (d); count 3), dissuading a witness from reporting a crime (§ 136.1, subd. (b)(1); count 4), dissuading a witness from prosecuting a crime (§ 136.1, subd. (b)(2); count 5), and five counts of disobeying a protective order (§ 166, subd. (c)(1); counts 6 through 10).  The

1

jury found true allegations that defendant personally inflicted great bodily injury under circumstances involving domestic violence (§ 12022.7, subd. (e)) in the commission of counts one, two, and three.

In a bifurcated proceeding, the trial court found that defendant had two prior serious felony convictions: assault by force likely to cause great bodily injury in which he personally inflicted great bodily injury (§§ 245, subd. (a)(1), 12022.7, subd. (a)), and conspiracy to assault in which great bodily injury was personally inflicted (§§ 182, 245, subd. (a)(1), 12022.7). The court dismissed one prior serious felony conviction for purposes of sentencing. (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.) Defendant was sentenced to prison for 30 years including fully consecutive middle terms of four years each on counts four and five.

Both parties appealed. We later granted the People's request to dismiss their appeal.

Defendant contends (1) there was insufficient evidence of dissuasion from reporting a crime, and (2) section 654 precludes imposition of sentence for *both* dissuasion from reporting *and* dissuasion from prosecuting. We affirm the judgment.

FACTS AND PROCEEDINGS

Our statement of facts is limited to counts four and five which are at issue in this appeal.

On the morning of February 6, 2011, Weed Police Officer Travis Cooke contacted R.E. while she was seated on the front porch of defendant's residence. She was crying and appeared to be in pain. Her face had been cut and blood was running from her nose, which was pushed to one side and appeared to be broken.

R.E. told Officer Cooke that she had been in a physical altercation with defendant who had been "hitting [her] like [she] was a man." After he slapped her face, she struck him back in self-defense and he struck her face with his fist. R.E. cried continuously

2

during her five minute conversation with Officer Cooke. He summoned an ambulance that took her to a hospital.

Officer Cooke then spoke with defendant who said he was in a dating relationship with R.E. who "frequently" stayed at his residence. He admitted that he had hit R.E. and said that she had hit him too. Defendant was arrested and transported to the police station.

A month later, on March 7, 2011, R.E. visited defendant in jail. Officer Cooke reviewed an audio recording of the jail visit. Within the first 10 to 15 minutes, defendant had told R.E. that he might be charged with another crime for speaking to her. Then he continued to speak with her for about an hour. During the conversation, he asked her to have a no-contact order dropped and asked her not to make any statements to the district attorney. R.E. asked defendant for money, and he told her he would try to get her some money via his daughter.

At 8:00 a.m. the next morning, March 8, 2011, defendant telephoned R.E. from the jail. Officer Cooke reviewed the recording of the telephone call and identified both of the voices. During this conversation, defendant again asked R.E. not to make any statements to the district attorney.

Two hours later, around 10:00 a.m., defendant again spoke with R.E. and said that he should not be talking to her due to the no-contact order. He said he "would get another charge" because he was talking with her. Defendant told R.E. that it was her fault that he was in jail.

A third telephone call occurred a few hours later, around 1:30 p.m. A fourth telephone call was placed the next day, March 9, 2011. A fifth telephone call occurred the following day, March 10, 2011. Officer Cooke did not recall whether these last three conversations included discussion of R.E. talking with the district attorney.

3

DISCUSSION

I

*Substantial Evidence of Dissuading the Victim*

Defendant contends his conviction on count four is not supported by substantial evidence and must be reversed because his efforts at dissuading R.E. from reporting his criminal conduct to the district attorney occurred after he had been arrested for that same offense. In his view, "it made no sense to dissuade [R.E.] from reporting something that was already known to the authorities."

Count four alleged in relevant part that defendant, "on or about March 7, 2011, through March 10, 2011, did unlawfully attempt to prevent and dissuade [R.E.], a victim and witness of a crime, from making a report of such victimization to a . . . prosecuting agency . . . , violating Section 136.1(b)(1)."

Count five alleged in relevant part that defendant, "on or about March 7, 2011, through March 10, 2011, did willfully and unlawfully attempt to prevent and dissuade [R.E.], a victim and witness of a crime[,] from causing a complaint [or information] . . . to be sought and prosecuted and assisting in the prosecution thereof, in violation of Section 136.1(b)(2)."

Defendant's preliminary examination was conducted on March 10, 2011.

In his closing summation, the prosecutor told the jury: "Let's talk about counts [four] and [five], which, loosely termed, are called 'dissuading witnesses.' . . . [¶] The instruction -- there is [*sic*] two kinds. Count [four], . . . dissuading [R.E.] from reporting a crime. Count [five] is dissuading her from assisting in the prosecution of the crime. [¶] So, they're quite similar, but there is a somewhat different instruction as to each. . . . [¶] Now, count [four], the issue is--what I have to prove is that [defendant] maliciously tried to prevent or discourage [R.E.] from making a report that she was a victim of a crime to law enforcement. [¶] Now, the basis of that is the phone calls between the 7th

4

and the 10th of March that the officer told you about, and what did he do?  Don't talk to the D.A.  Don't report what happened.  Don't tell them anything.  Don't report a crime."

The prosecutor continued:  "Count [five] is slightly different, but similar.  I have to prove that he tried to discourage.  Tried.  Didn't succeed, tried to discourage her from cooperating or providing information so that a complaint could be sought and prosecuted, and from helping to prosecute the action.  [¶]  Well, I'm the one prosecuting the action.  What did he say?  Don't talk to the people.  It would have been helpful if she would have done that, but she didn't.  He said not to.  It doesn't matter if she did or didn't.  He tried to get her to not talk to us.  That's enough for count [five].  He's guilty.  That's an easy one.  And he knew he was trying to do that.  He knew."

"On appeal, the test of legal sufficiency is whether there is substantial evidence, i.e., evidence from which a reasonable trier of fact could conclude that the prosecution sustained its burden of proof beyond a reasonable doubt.  [Citations.]  Evidence meeting this standard satisfies constitutional due process and reliability concerns.  [Citations.]  [¶]  While the appellate court must determine that the supporting evidence is reasonable, inherently credible, and of solid value, the court must review the evidence in the light most favorable to the [judgment], and must presume every fact the jury could reasonably have deduced from the evidence.  [Citations.]  Issues of witness credibility are for the jury.  [Citations.]"  (*People v. Boyer* (2006) 38 Cal.4th 412, 479-480.)

Section 136.1, subdivision (b) provides in relevant part:  "[E]very person who attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from doing any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison:  [¶]  (1) Making any report of that victimization to any peace officer or state or local law enforcement officer or probation or parole or correctional officer or prosecuting agency or to any judge.  [¶]  (2)  Causing a complaint, indictment,

5

information, probation or parole violation to be sought and prosecuted, and assisting in the prosecution thereof."

"To prove a violation of section 136.1, subdivision (b)(1), the prosecution must show (1) the defendant has attempted to prevent or dissuade a person (2) who is a victim or witness to a crime (3) from making any report of his or her victimization to any peace officer or other designated officials." (*People v. Upsher* (2007) 155 Cal.App.4th 1311, 1320.)

Defendant argues that, for section 136.1, subdivision (b)(1) "to make any sense, its application must relate [exclusively] to pre-arrest conduct, for no reasonable person would dissuade a complaining witness from making a report of a criminal offense, when his confinement established that such a report had already been made."

But so construed, section 136.1, subdivision (b)(1) would apply *only* where the dissuaded victim or witness speaks to a prosecutor or judge or to a probation, parole or correctional officer *prior to an arrest*. Unlike peace officers and state and local law enforcement officers, who ordinarily get involved in the criminal process prior to arrest, the involvement of prosecutors, judges and correctional, probation and parole officers generally comes later--in some cases, years later. "A court should not lightly adopt an interpretation of statutory language that renders the language useless in many of the cases it was intended to govern." (*Williams v. Superior Court* (1993) 5 Cal.4th 337, 354.) We do not lightly read subdivision (b)(1) to apply to several of the listed officers only on those rare occasions when they receive reports from victims prior to arrest.

Defendant relies on *People v. Fernandez* (2003) 106 Cal.App.4th 943, 950 (*Fernandez*), which stated in dictum: "In *People v. Hallock* (1989) 208 Cal.App.3d 595, 605-607, the court concluded that the offenses defined in section 136.1, subdivision (b) targeted pre-arrest efforts to prevent a crime from being reported to the authorities, rather than courtroom testimony. [¶] We agree with *Hallock*'s conclusion that section 136.1,

6

subdivision (b) punishes a defendant's pre-arrest efforts to prevent a crime from being reported to the authorities." Defendant's reliance on this dictum is misplaced.

The question presented in *Fernandez* was "whether an attempt to dissuade a witness from making a 'report . . . to any judge' includes an attempt to influence a victim's testimony at a preliminary hearing." (*Fernandez, supra,* 106 Cal.App.4th at p. 945.) Answering this question in the negative, *Fernandez* explained: "Starting with the 'plain and commonsense meaning' of section 136.1, subdivision (b)(1), a 'report' may be generally defined as 'an account presented.' [Citation.] In the context of reporting a crime, it generally means notifying the authorities that the crime has occurred and providing information about the offense. 'Testimony,' on the other hand, is more specifically defined as a 'declaration by a witness under oath, as that given before a court.' [Citation.] In some contexts, the term 'report' could reasonably encompass 'testimony,' as, for example, when members of a factfinding committee present their conclusions to the United States Congress while under oath. But neither lawyers nor laypeople are apt to characterize testimony by a witness in a criminal proceeding as a 'report.' Common usage of the word 'report' does not support the People's interpretation of section 136.1, subdivision (b)(1), even if preliminary hearing testimony would literally fall within the definition of 'report' as 'an account presented.' " (*Id.* at p. 948.)

The present case is distinguishable from *Fernandez* because defendant's dissuasion preceded the preliminary hearing, if only by a matter of days. *Fernandez* does not hold that "[m]aking any report of . . . victimization" cannot include the act of "providing information about the offense" to a prosecutor following an arrest and prior to a preliminary examination. (*Fernandez, supra*, 106 Cal.App.4th at pp. 947-948; see also *People v. Velazquez* (2011) 201 Cal.App.4th 219, 232-233 [limiting the *Fernandez* dictum to section 136.1, subdivision (b)(1), thus excluding subdivision (b)(2)].)

*Fernandez* relied on *People v. Hallock*, *supra*, 208 Cal.App.3d 595, 607, which explained that "Section 136.1 basically prohibits four forms of witness intimidation. In

7

subdivision (a), it forbids knowingly and maliciously preventing or dissuading a witness or victim from attending or testifying at trial.  *Subdivision (b) prohibits preventing or dissuading a witness or victim from (1) reporting the victimization; (2) causing a complaint or similar charge to be sought*; and (3) arresting or causing or seeking the arrest of any person in connection with such victimization."  (Italics added.)  In *Hallock*, "the threat was made at the time of the original crime and was as follows: 'if you tell anybody anything that happened tonight here, . . . I'll blow your house up.' "  (*Ibid*.)  *Hallock* thus had no occasion to consider whether subdivision (b)(1) could include a postarrest and pre-preliminary examination report to the prosecuting agency.  Although *Fernandez* described *Hallock* as concluding that section 136.1, subdivision (b) "targeted" prearrest efforts, neither case held the statute inapplicable to postarrest reports that precede any courtroom testimony.

Neither *Fernandez* nor *Hallock* considered the sort of dissuasion here at issue:  a postarrest request "not to make any statements to the [district attorney's]" office about the case.  This request is broader than a mere request to not testify at the preliminary hearing or at trial:  it asks the witness to not report to the district attorney's office any facts of the case including, most importantly, any facts not previously reported to the police.  Where, as here, the defendant is taken into custody at or near the time of the offense, the prosecution's fact-gathering process ordinarily must continue while the defendant is in custody.  We find no indication that the Legislature intended to exempt this fact-gathering process from the protection of section 136.1 and thus encourage the sort of dissuasion shown on the present record.  We decline to give the statute an absurd construction under which the victim, having reported the incident to one entity and having secured the perpetrator's temporary incarceration, must then endure the perpetrator's dissuasion from reporting facts of the offense to other listed entities.  (E.g., *People v. Story* (2009) 45 Cal.4th 1282, 1293.)

8

The record contains abundant evidence that defendant repeatedly attempted to dissuade R.E. from reporting her victimization to the district attorney. (*People v. Upsher, supra,* 155 Cal.App.4th at p. 1320.) It was not necessary to prove that R.E. was, in fact, dissuaded or that she would have reported to the prosecution any details not previously disclosed to the police. Defendant's count four conviction is supported by substantial evidence. (*People v. Boyer, supra,* 38 Cal.4th at pp. 479-480.)

II

*Dual Punishment Under Section 654*

Defendant contends that, even if the judgment as to count four is supported by substantial evidence, the prison term for that offense must be stayed pursuant to section 654 in order to avoid dual punishment.

At sentencing, the trial court addressed counts four and five. The court noted that the charges arose from recorded conversations that R.E. had with defendant while he was in jail. The court remarked that the jury implicitly had determined that the conversations were "efforts on [defendant's] part to subvert the criminal justice system having to do with his charges."

The trial court stated it "is aware that there is some continuity between [counts four and five] and that [R.E.] was a willing recipient of such suggestions. And the court recognizes that there is an argument to be made that section 654 could apply to these two charges, but the court finds that these two efforts were not the same act. They were two acts on different days with the same objective, but they were multiple acts. So the court does not believe that it is obligated to conclude that it was a single act that must be punished only once." The court reiterated that "having heard the evidence at trial, it's this court's conclusion that these were separate acts and it is appropriate that they be punished separately."

Section 654 provides in relevant part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that

9

provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." "The failure of defendant to object on this basis in the trial court does not forfeit the issue on appeal. [Citation.]" (*People v. McCoy* (2012) 208 Cal.App.4th 1333, 1338.)

" 'The proscription against double punishment in section 654 is applicable where there is a course of conduct which . . . comprises an indivisible transaction punishable under more than one statute . . . . The divisibility of a course of conduct depends upon the intent and objective of the actor, and if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one.' [Citation.] 'The defendant's intent and objective are factual questions for the trial court; [to permit multiple punishments,] there must be evidence to support a finding the defendant formed a separate intent and objective for each offense for which he was sentenced. [Citation.]' " (*People v. Coleman* (1989) 48 Cal.3d 112, 162; see *People v. Latimer* (1993) 5 Cal.4th 1203, 1208.)

Relying on this one-intent-and-objective test, defendant argues that he possessed the identical criminal intent during each attempt to convince R.E. not to speak to the county prosecutor about his criminal conduct. But "a finding that multiple offenses were aimed at one intent and objective does not necessarily mean that they constituted 'one indivisible course of conduct' for purposes of section 654. If the offenses were committed on different occasions, they may be punished separately." (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1253.)

"As our Supreme Court has explained in referring to section 654, 'a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment.' [Citation.] 'This is particularly so where the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and to renew his or her intent before committing the next one, thereby aggravating the violation of public security or policy already undertaken.' [Citation.] This rule has been

applied in numerous instances when several crimes could broadly be described as part of an overarching criminal plan, but were committed on different days. [Citations.]" (*People v. Kurtenbach* (2012) 204 Cal.App.4th 1264, 1289, citing *People v. Beamon* (1973) 8 Cal.3d 625, 639, fn. 11.)

The trial court appears to have invoked this rule when it stated "[t]hey were two acts on different days with the same objective, but they were multiple acts." The evidence showed that defendant had ample opportunity to reflect and to renew his intent between the first conversation on March 7, 2011, and the second conversation the following day. (E.g., *People v. Trotter* (1992) 7 Cal.App.4th 363, 365-367 [two assaults on same victim one minute apart may be punished separately].) The court's imposition of punishment on counts four and five is supported by substantial evidence. (*People v. Coleman, supra,* 48 Cal.3d at p. 162.)

### III

### *Abandonment of Appeal*

On October 12, 2012, the trial court imposed sentence in the present case as well as in an unrelated 2010 case, No. MCYKCRF10570. We granted defendant's appellate counsel's request to construe his notice of appeal as including an appeal from the 2010 case. Counsel explained that, if the notice of appeal were not so construed, he would be unable to seek relief from an error with respect to presentence credits.

Appellate counsel later filed an opening brief raising the claims we considered in parts I and II and making no claim of error with respect to presentence credits. Accordingly, we deem the appeal in the 2010 case to be abandoned and order the appeal dismissed.

DISPOSITION

In case No. MCYKCRBF11194, the judgment is affirmed.  In case No. MCYKCRF10570, the appeal is dismissed.


                                           HULL        , Acting P. J.


We concur:


       ROBIE      , J.


       HOCH       , J.