Filed 3/14/24  P. v. Sigler CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>JEFF LAMONTE SIGLER,<br><br>　　　　Defendant and Appellant. | C096106<br><br>(Super. Ct. No. STK-CR-FDV-2021-0007723) |

A jury convicted defendant Jeff Lamonte Sigler of assault with a deadly weapon against his then-girlfriend and attempting to dissuade the victim from causing charges to be filed and assisting the prosecution.  The trial court sentenced defendant to 20 years in state prison.

Defendant now contends (1) there is insufficient evidence to support his dissuasion conviction, (2) his trial counsel provided ineffective assistance by failing to object to certain testimony from the prosecution's domestic violence expert, (3) the trial court should not have instructed the jury that it could use the domestic violence expert's testimony to assess the victim's credibility, and (4) cumulative prejudice requires reversal.

Finding no merit in defendant's contentions, we will affirm the judgment.

1

Sometime around April or May 2021, defendant and his then-girlfriend Leanna were driving together near Lodi. An argument between the two resulted in defendant driving Leanna's car off the road and into a vineyard. The car sustained extensive damage. Around the same time, Leanna's trailer was stolen. Defendant regained possession of the trailer and told Leanna it now belonged to him. Leanna began staying at various motels and withdrew $800 from defendant's bank account using his bank card.

On July 11, 2021, defendant sent Leanna a text message late that night saying he was going to give her "one opportunity" to return his bank card, daring her to claim she did not have it. He then sent three text messages during the early morning hours of July 12, 2021, threatening to kill her if she did not return his money. Leanna did not respond.

About 90 minutes later, while driving down Hammer Lane in Stockton, Leanna noticed defendant's gold Buick behind her. Defendant drove into the back of her Acura. Leanna accelerated to get away from him but defendant pursued her. When Leanna reached a dead end, defendant got out of his car and tried to open her car door. Leanna managed to turn around and drive away. Defendant caught up to her and drove into the rear passenger side quarter panel of her car, causing her to spin out and crash into a brick structure. Defendant drove away. Leanna was seriously injured in the crash and was treated for a fractured hip.

The People charged defendant with assault with a deadly weapon on July 23, 2021, and arraignment occurred three days later. On September 6, defendant called Leanna from jail. He said he loved her and would choose her over a million dollars. Leanna said he was lying: "You fucking made me spin out and crash my car over money . . . ." Defendant denied causing the crash and claimed he was "nowhere near [her] car." Leanna again said he was lying. Defendant asked her what was going to happen when he went to court the next day. Leanna said she did not know. Defendant

2

asked whether she would be there.  Leanna said she would, but she did not want the prosecution to know she was there because she "didn't want to be part of it."

Defendant told Leanna:  "[T]hey're tripping on some messages that you said I sent  you.  And I told them, I told them they were tripping . . . .  I didn't sent you no messages like that."  Defendant continued:  "That's the only thing that they, that they were tripping on.  They said they were going to give me two years for that message . . . because I have a strike."  Defendant told Leanna, "if you don't fix that tomorrow that's what they're going to give me," but she said she did not "have to fix it at all" and added:  "You told me, you said that you were looking at more than two years, you said 10 years, that's the only reason why I started feeling sorry thinking about it again cause that would be fucked up."

Defendant and Leanna again argued over whether he hit her car and caused the crash.  Defendant repeatedly denied it.  Leanna was adamant that he did.  Defendant then asked her whether she was "going to help [him] tomorrow or not" and added:  "I could sink your ship just as fast as you[] were trying to sink mine for some reason. . . .  Quit lying to them."  Leanna asked:  "About what?"  Defendant said he needed Leanna "to fucking go in there" and tell the prosecution that he "didn't send [her] no messages with ill intentions."  Defendant told Leanna: "They're not worried about the car, they're worried about the messages.  They're going to give me two years."  Leanna replied: "You are going to have to explain the messages yourself.  I don't know how to explain messages that came from your phone."  Defendant said:  "How did they get . . . it doesn't have my name on it?"  Leanna explained:  "In my phone it does."  Defendant and Leanna then argued over whether that was true.  Eventually, defendant made a final request: "Can you go over there and tell them that I didn't send the messages to you, tomorrow or not?  That's all."

On September 29, the People moved to amend the complaint to add the dissuasion count.  The motion was granted the following month.  In November, an information was

3

filed that included the dissuasion count, a preliminary hearing was held, and defendant was arraigned on the information.

Although Leanna had reported to responding officers and a detective that defendant was the one who chased her and twice ran into her car, at trial she denied that defendant caused the crash. But portions of the car chase were captured on various traffic cameras along the route, and an accident investigator testified that the damage to defendant's Buick and the gold paint transfer on Leanna's car indicated that defendant had caused the crash.

In connection with the assault count, the prosecution presented testimony from an expert in domestic violence, David Cropp, as well as testimony from another one of defendant's former girlfriends and her mother, recounting prior incidents of domestic violence.

The jury convicted defendant of assault with a deadly weapon and attempting to dissuade the victim from causing charges to be filed and assisting the prosecution. With respect to the assault count, the jury also found that defendant personally inflicted great bodily injury under circumstances involving domestic violence. In a bifurcated proceeding, the trial court found that defendant was previously convicted of a serious felony offense qualifying as a strike within the meaning of the three strikes law. The trial court also found several aggravating circumstances to be true. It sentenced defendant to serve 20 years in state prison.

Additional background is set forth in the discussion as relevant to the contentions on appeal.

DISCUSSION

I

Defendant contends the evidence is insufficient to support his dissuasion conviction.

Defendant was charged with dissuasion under Penal Code section 136.1, subdivision (b)(2).[1]  As relevant here, that provision makes it unlawful for any person to attempt to prevent or dissuade a crime victim or witness to a crime from "[c]ausing a complaint, indictment, information, probation or parole violation to be sought and prosecuted, and assisting in the prosecution thereof."  (§ 136.1, subd. (b)(2).)

Relying on *People v. Reynoza* (2022) 75 Cal.App.5th 181 (*Reynoza*), review granted May 11, 2022, S273797, defendant argues the evidence is insufficient to support his dissuasion conviction because the jailhouse phone call between defendant and Leanna took place after his arrest and the filing of the criminal complaint, and after Leanna had shown the detective incriminating text messages from defendant.  As explained in *Reynoza*, section 136.1, subdivision (b)(2) "requires proof that, among other things, the defendant attempted to prevent or dissuade another person from causing [one of the enumerated charging documents] to be filed.  If the defendant was aware the relevant charging document had already been filed, and the defendant did not attempt to prevent or dissuade the filing of any amended or subsequent charging document, the defendant has not violated [this provision]."  (*Reynoza,* at p. 189.)  In that case, after the defendant's brother was charged with a firearms offense and made several court appearances, the defendant and two others approached a witness in his brother's case and told him to drop the charges.  (*Id*. at p. 184.)  However, because the relevant charging document had already been filed at the time of the alleged dissuasion, and because there was no evidence that the defendant was either unaware of that fact or intended to prevent or dissuade the filing of an amended or subsequent charging document, the evidence was insufficient to support the dissuasion conviction.  (*Id*. at p. 187.)

---

[1] Undesignated statutory references are to the Penal Code.

Here, although defendant was already charged with assault with a deadly weapon at the time of his phone call with Leanna, his statements during the phone call indicate he intended to dissuade her from causing an amended charging document to be filed. At the time of the phone call, defendant was charged with a single offense, assault with a deadly weapon based on driving his car into Leanna's car and causing her to crash. During the phone call, however, defendant expressed his belief that the People were more interested in prosecuting him for the text messages he sent Leanna prior to the car chase and collision: "They're not worried about the car, they're worried about the messages." Those messages arguably contained a criminal threat. But in order to prosecute defendant for making a criminal threat, the People would have had to amend the complaint to charge that offense. Moreover, although defendant and Leanna argued during the phone call about whether he hit her car, his specific request was for her to tell the prosecution that he did not send the text messages: "Can you go over there and tell them that I didn't send the messages to you, tomorrow or not? That's all."

The evidence is sufficient to support a conclusion that defendant intended to dissuade Leanna from causing an amended charging document "to be sought and prosecuted, and assisting in the prosecution thereof." (§ 136.1, subd. (b)(2).) Accordingly, we need not address an issue pending in the California Supreme Court regarding the differing interpretations of section 136.1, subdivision (b)(2) in *Reynoza* and in *People v. Velazquez* (2011) 201 Cal.App.4th 219, 232-233 [the provision encompasses an attempt to dissuade a victim or witness from assisting in the prosecution of a charging document that has already been filed].)

II

Defendant next contends his trial counsel provided constitutionally deficient assistance by failing to object to the domestic violence expert's testimony that false claims of domestic violence occur in only 2 percent of cases.

6

## A

The prosecution's domestic violence expert, David Cropp, offered general testimony on the subject of domestic violence, including the effect of such violence on the behavior of victims. When the prosecutor asked whether a battered person ever makes a false report, Cropp answered: "Yes." The prosecutor then asked: "About what percentage of cases are false?" Cropp responded: "I don't know. I've spoken with my colleague, Dr. Barnard about this. At one point, she had discussed this with an FBI agent who is –" At this point, a hearsay objection was sustained. The prosecutor asked: "Is it a high percentage? Is it a low percentage?" Cropp answered: "Two percent." The prosecutor asked for the source of the percentage, and Cropp replied: "Research into data supplied to the FBI through the Uniform Crime Reporting system, UCR." The prosecutor followed up: "UCR. So two percent of all of the domestic violence reports that they reviewed and the UCRs were actual false reports?" Cropp answered: "Correct."

During cross-examination, defense counsel asked Cropp what the 2 percent figure meant "in terms of [the] number of false reports." Cropp answered: "I couldn't tell you." Defense counsel asked: "10,000?" Cropp again answered: "I couldn't tell you." Defense counsel asked how many domestic violence reports are made each year. Cropp said he did not know. Defense counsel asked how Cropp could provide a percentage if he did not know how many domestic violence reports there were. Cropp responded that he did not need that information "in order to recall a number of them that may be false reports." He added: "I know in Sacramento County, they handle upwards of 25,000 cases a year of domestic violence." Counsel followed up: "So two percent would be about 500?" Cropp responded: "You'll have to do the math. I'm not good at numbers."

Neither the prosecutor nor defense counsel mentioned this testimony in their respective closing arguments.

7

B

"An expert witness may not give an opinion as to whether another witness is telling the truth, or whether the defendant is guilty." (*People v. Lapenias* (2021) 67 Cal.App.5th 162, 176 (*Lapenias*).) Expert testimony that provided the jury with a statistical probability of false reports in a different context, child sexual abuse, or simply characterized the occurrence of false reports as rare, was held to violate this restriction on expert testimony. (*Id*. at p. 179; *People v. Julian* (2019) 34 Cal.App.5th 878, 886 (*Julian*); *People v. Wilson* (2019) 33 Cal.App.5th 559, 570-571 (*Wilson*).) The testimony was not helpful to the jury because it told them nothing about whether the particular allegation in the case was false. (*Wilson,* at p. 571.) Instead, it invited the jury to presume the defendant was guilty based on statistical probabilities rather than the evidence properly introduced in the case. (*Julian,* at p. 886.)

The same reasoning applies to Cropp's testimony about a 2 percent occurrence of false reports of domestic violence. However, as in *Julian*, defense counsel did not object to the testimony. (*Julian, supra*, 34 Cal.App.5th at p. 887.) We therefore consider whether defense counsel's failure to object fell below an objective standard of reasonableness and resulted in prejudice. (*Id*. at p. 888; *Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674].)

The People agree that defense counsel should have objected to the challenged testimony, but argue the failure to object did not prejudice defendant. We agree with this assessment.

Cropp's testimony about false allegations of domestic violence was brief and somewhat uncertain. It was challenged by defense counsel during cross-examination. And neither party mentioned the testimony during closing arguments. Moreover, the jury was instructed on the proper use of Cropp's testimony. The jury was also instructed that they were not required to accept an expert's testimony as true and that they alone must

judge the credibility of witnesses. "We presume the jurors understood and followed the instructions." (*Lapenias, supra*, 67 Cal.App.5th at p. 180.)

Additionally, evidence of defendant's guilt was very strong. Leanna provided a contemporaneous statement to the responding officers identifying defendant as the one who chased her and drove his gold Buick into the side of her car. When Leanna was later interviewed by a detective, she again identified defendant as the one who chased and hit her car, adding that he also drove into her car at the start of the chase. These statements were corroborated by the gold paint transfer observed on Leanna's car. Leanna's statements were further corroborated by the accident investigator's testimony. He opined that damage to defendant's front bumper and the location of the gold paint transfer on Leanna's rear passenger quarter panel indicated that defendant drove into the side of Leanna's car and caused her to spin out, as she described to the responding officers. Portions of the car chase were also captured on traffic cameras. Moreover, the text messages defendant sent to Leanna prior to the car chase corroborated her statements regarding his motive for the car chase and assault, i.e., she took money from his bank account. In addition, when defendant called Leanna and tried to convince her to tell the prosecution that he did not send those text messages, she remained steadfast in her assertion that he hit her car and caused the crash. Thus, although Leanna eventually recanted and testified that defendant did not hit her car, there was strong evidence that he did so.

There is no reasonable probability of a more favorable outcome had defense counsel successfully objected to Cropp's testimony regarding a 2 percent occurrence of false domestic violence reports. (See *Lapenias, supra*, 67 Cal.App.5th at p. 180; *Wilson, supra*, 33 Cal.App.5th at p. 572.) The claim of ineffective assistance lacks merit.

### III

Defendant also asserts that the trial court prejudicially erred and violated his federal constitutional rights by instructing the jury with the concluding portion of

9

CALCRIM No. 850, informing the jury that it could use Cropp's testimony to assess the believability of Leanna's testimony.

As given in this case, CALCRIM No. 850 informed the jury as follows:

"You've heard testimony from David Cropp regarding the effect of intimate partner battering.

"David Cropp's testimony about intimate partner battering is not evidence that the defendant committed any of the crimes charged against him or any conduct or crimes in which he was not charged.

"You may consider this evidence only in deciding whether or not [Leanna's] conduct was not inconsistent with the conduct of someone who has been abused, *and in evaluating the believability of her testimony*." (Italics added.)

Defendant argues the italicized portion of the instruction impermissibly told the jury to use Cropp's testimony "to evaluate [Leanna's] believability and conclude the charges were true." He claims it "advised the jury to presume [Leanna] had been battered at some point to determine whether her trial testimony was false . . . and thus [defendant] was guilty of the charged offenses."

The challenged language contains no such presumption. It merely informed the jury that it could use Cropp's testimony in evaluating Leanna's testimony. That testimony contradicted her prior statements accusing defendant of driving into the side of her car, causing her to spin out and crash into the brick structure on the side of the road. As defendant himself acknowledges, the instruction properly informed the jury it could use Cropp's testimony "to determine whether [her] recantation was not inconsistent with the behavior of a battered partner." That determination is relevant to the believability of her testimony. And if the jury disbelieved her testimony in this regard, and instead believed her prior statements, it was more likely to conclude defendant assaulted her with a deadly weapon. However, this does not make the italicized language objectionable. "If the expert testimony was not related in some way to whether the abuse occurred, it would

10

be irrelevant. Expert testimony may not be improperly used to directly determine whether the abuse occurred. But like much of the other evidence that comes in at a trial, it may be used indirectly to assist the jury in evaluating whether the alleged victim's statements are believable." (*People v. Brackins* (2019) 37 Cal.App.5th 56, 71, italics omitted.) In other words, the jury may properly "use the expert testimony to help ground its analysis of the consistency of the complaining witness's conduct" and then "use this 'consistency' analysis in its general evaluation of the believability of the complaining witness's testimony." (*People v. Sexton* (2019) 37 Cal.App.5th 457, 467.)

CALCRIM No. 850 properly informed the jury that it could not use Cropp's testimony to conclude defendant committed any charged or uncharged offenses, but it could use the testimony to assess whether or not Leanna's conduct was not inconsistent with having been abused, and in evaluating the believability of her testimony. There was no error.

IV

Defendant further asserts cumulative prejudice. But because we have found no merit in his other contentions, there is no accumulated prejudice.

DISPOSITION

The judgment is affirmed.

     /S/

MAURO, Acting P. J.

We concur:

     /S/

BOULWARE EURIE, J.

     /S/

MESIWALA, J.

11