Filed 10/25/23  P. v. Ramsey CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>HENRY LAVELL RAMSEY III,<br><br>        Defendant and Appellant. | F085291<br><br>(Kern Super. Ct. No. MF013434A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John W. Lua, Judge.

Rachel Varnell, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, and Joseph Penney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

On May 23, 2019, defendant Henry Lavell Ramsey III, attacked B.E., the mother of his children.  Defendant was arrested the same day.  Approximately three days after his arrest, defendant called B.E. and asked her to drop the charges.

On October 12, 2022, defendant was convicted by a jury of domestic violence and dissuading a victim of a crime from causing a charging document from being filed.  On appeal, defendant contends that:  (1) insufficient evidence supports his conviction for dissuading a victim because a conviction pursuant to Penal Code section 136.1, subdivision (b)(2)[1] can only be based on prearrest conduct, and his call to B.E. in this case occurred postarrest; and (2) the trial court's instruction on dissuading a victim was erroneous.  The People disagree.  We agree with defendant that there was instructional error, and that this instructional error requires reversal.  Defendant does not appeal his conviction on the domestic violence charge or the enhancement, and this conviction stands.

## PROCEDURAL HISTORY

On September 29, 2022, the Kern County District Attorney filed an amended information charging defendant with felony domestic violence (§ 273.5, subd. (a); count 1) and dissuading a victim (§ 136.1, subd. (b)(2); count 2).  As to count 1, the information further alleged that defendant inflicted great bodily injury (§ 12022.7, subd. (e)).  As to both counts, the information alleged that defendant committed a crime that involved great violence or great bodily harm (Cal. Rules of Court, rule 4.421(a)(1)).

Defendant was found guilty by a jury on both counts on October 12, 2022.  The jury further found the great bodily injury enhancement true, and the trial court found true the aggravating sentencing factor as to both counts (defendant and the People waived their right to a jury trial on this issue).

---

[1] All further undesignated statutory references are to the Penal Code unless otherwise stated.

Defendant was sentenced on November 9, 2022. As to count 1, defendant was sentenced to two years (the lower term), plus an additional three years for the section 12022.7 great bodily injury enhancement. As to count 2, defendant was sentenced to two years, to be served consecutively to the sentence on count 1.

On November 10, 2022, defendant filed a notice of appeal.

## FACTUAL SUMMARY

**The Prosecution's Case**

Defendant is the father of two of B.E.'s children. In 2015, B.E. discovered that defendant had a relationship with another woman and that woman was pregnant with defendant's child. However, defendant and B.E. continued to work on their relationship between 2015 and 2019.

In January of 2019, defendant found out that B.E. was talking to other people. He got very upset, and broke B.E.'s phone.

In May of 2019, B.E. began a romantic relationship with I.W. After B.E. began this relationship, she told defendant that she did not want to be with him and was talking to someone else. At this time, B.E. did not live with defendant.

On May 22, 2019, B.E. was at a friend's house. Defendant came to the house and told B.E. he wanted to talk to her. B.E. told defendant she did not want to talk to him. Defendant got upset, slapped B.E.'s cheek, and walked away.

Later that night, B.E. went to I.W.'s apartment. Only I.W. and his brother were there. After talking with I.W. and his brother, B.E. went to bed in I.W.'s room. She woke up to pounding on the front door.

At about 5:00 or 6:00 a.m. on May 23, 2019, defendant came into I.W.'s room. He grabbed B.E. by the straps on her shirt and threw her into a T.V. He then hit B.E. in the face. The incident lasted five to 10 minutes.

After that, defendant left the room. I.W.'s brother told B.E. to leave, and she went to the police station.

Officer Kelakios met with B.E. in the lobby of the California City Police Department. He saw that B.E. had a blood-shot eye, as well as redness and swelling on the left side of her face. B.E. told Kelakios about an incident that occurred earlier that morning involving defendant. While B.E. was talking to Kelakois, she appeared frightened, and her whole body was shaking. That same day, defendant was taken into custody.

Later, B.E. went to the Antelope Valley Hospital emergency room. Jaratnam, a physician's assistant at the emergency room, saw B.E. B.E. presented with facial injuries. Jaratnam ordered a CT scan of her face and brain. Dr. Tzung interpreted the CT scan of B.E.'s facial bones, and he found fractures of the bone at the tip of her nose and a minimally depressed fracture at the bottom of her left eye socket.

On May 26, 2019, defendant contacted B.E. by phone and asked her to drop the charges, and she felt pressured to do so. The call was recorded, and it was played for the jury. During the call, defendant asked B.E. if she was going to court on Tuesday to drop the charges and talk to the judge. When B.E. asked defendant why she has to talk to the judge, defendant told her it was to let the judge know that she was dropping the charges. He also told her to go to the office in the courthouse to drop the charges, which is how she dropped the charges "last time." At the time of the call, B.E. still had physical injuries.

**Defendant's Case**

Defendant and B.E. began their relationship in 2002. During the course of the relationship, defendant and B.E. had two children together. They stopped living together in 2016. Even after defendant and B.E. separated, they still "got back together and reconsolidated [their] relationship."

On May 21, 2019, defendant told B.E. that his girlfriend was five months pregnant. B.E. was upset. She gave the children to defendant and told defendant that she did not want them anymore. Later that same day, defendant saw B.E. again at a friend's

4.

house. They spoke, and B.E. again told defendant that she did not want the children. Defendant and the children went home. Defendant did not hit B.E.

Defendant did not go to I.W.'s house and hit B.E. Defendant was not aware that B.E. was seeing I.W. until she came to his house and told him on the date of the incident. Defendant did not know I.W.

In 2007, during a domestic argument with defendant, B.E. hit herself in the face, legs, and chest with an orange that was inside of a sock. Similar incidents occurred throughout their relationship. In 2015, B.E. cut her wrists after a domestic argument. She also jumped out of a moving car.

Defendant called B.E. from jail and asked her to drop the charges. He did so because he did not do what she accused him of, because he had to pay rent, and because he had custody of his kids.

## DISCUSSION

Defendant argues that the trial court erred in instructing the jury regarding the section 136.1, subdivision (b)(2) charge. We agree. Based on the errors in the instructions, the jury likely found defendant guilty without finding that he tried and intended to prevent a charging document from being filed. Accordingly, defendant's section 136.1, subdivision (b)(2) conviction must be reversed.

## I.    Standard of Review

"We review de novo whether jury instructions state the law correctly." (*People v. Jackson* (2010) 190 Cal.App.4th 918, 923.) " 'When an appellate court addresses a claim of jury misinstruction, it must assess the instructions as a whole, viewing the challenged instruction in context with other instructions, in order to determine if there was a reasonable likelihood the jury applied the challenged instruction in an impermissible manner.' " (*People v. Jennings* (2010) 50 Cal.4th 616, 677.) " '[W]e presume the jury understood and followed the court's instructions.' " (*People v. Erskine* (2019) 7 Cal.5th 279, 303.) If possible, we interpret the instructions "so as to support the judgment rather

than defeat it if they are reasonably susceptible to such interpretation."  (*People v. Laskiewicz* (1986) 176 Cal.App.3d 1254, 1258.)

Depending upon the basis of the claimed errors, we review instructional errors and for harmless error under either *Chapman v. California* (1967) 386 U.S. 18, 24 or *People v. Watson* (1956) 46 Cal.2d 818, 836.  Under the more stringent *Chapman* standard, which applies to errors of constitutional dimension, reversal is required unless the reviewing court can conclude beyond a reasonable doubt that the error did not contribute to the verdict.  (*Chapman*, at p. 24.)  Under the alternative *Watson* standard, which applies to errors of state law, reversal is not required unless it is reasonably probable the defendant would have obtained a more favorable result had the error not occurred. (*Watson*, at p. 836.)

As discussed in more detail below, the instructional errors involved elements of the offense, and because of the instructional errors, the jury could find defendant guilty without finding all the necessary elements of the offense.  Accordingly, the *Chapman* standard applies here.  (*People v. Hendrix* (2022) 13 Cal.5th 933, 942 ["Among the constitutional errors subject to *Chapman* review is misinstruction of the jury on one or more elements of the offense"]; *People v. Chun* (2009) 45 Cal.4th 1172, 1201 ["Instructional error regarding the elements of the offense requires reversal of the judgment unless the reviewing court concludes beyond a reasonable doubt that the error did not contribute to the verdict"].)  Under the *Chapman* standard, "a reviewing court may hold the error harmless where it would be impossible, based on the evidence, for a jury to make the findings reflected in its verdict without also making the findings that would support a valid theory of liability."  (*In re Lopez* (2023) 14 Cal.5th 562, 568.)

## II.    Analysis

Defendant admits that defense counsel did not object to the instructions at the trial court.  However, defendant argues that we may review the instructions despite this failure because his substantial rights were affected, and he was prejudiced by the errors.

As relevant here, the trial court instructed the jury as follows:

"The defendant is charged in Count 2 with intimidating a witness in violation of … section 136.1.

"To prove that the defendant is guilty of this crime, the People must prove that:

"1A.  The defendant tried to prevent or discourage [B.E.] from making a report that she was a victim of a crime to inflicting injury on a follow parent resulting in a traumatic condition;

"OR

"1B.  The defendant tried to prevent or discourage [B.E.] from cooperating or providing information so that a complaint could be sought and prosecuted, and from helping to prosecute that action;

"2.  [B.E.] was a crime victim;

"AND

"3.  The defendant knew he was preventing or discouraging [B.E.] from testifying and intended to do so."

Defendant argues that in paragraph 1A of this instruction, the jury was instructed as to an element of 136.1, subdivision (b)(1), dissuading a victim from making a report. In paragraph 3, the jury was instructed as to an element of 136.1, subdivision (a), dissuading a witness from giving testimony. However, defendant could not be convicted under subdivision (b)(1) or subdivision (a) because he was not charged with these offenses.

## A.    *The Claim Has Not Been Forfeited*

Under section 1259, we may review any jury instruction given – even though no objection was made below –"if the substantial rights of the defendant were affected thereby." (§ 1259.) Given the errors in the instructions regarding the elements of section 136.1, subdivision (b)(2), which are described in more detail below, this claim is cognizable on appeal. (See *People v. Hillhouse* (2002) 27 Cal.4th 469, 503 ["A party

may not argue on appeal that an instruction correct in law was too general or incomplete, and thus needed clarification, without first requesting such clarification at trial …. [However,] [i]nstructions regarding the elements of the crime affect the substantial rights of the defendant, thus requiring no objection for appellate review"]; (*People v. Smithey* (1999) 20 Cal.4th 936, 976, fn. 7 [a claim that an instruction misstated the law or violated the due process clause "is not of the type that must be preserved by objection"].)

We also find that defendant's claim of error has not been forfeited under *People v. Toro* (1989) 47 Cal.3d 966 (disapproved on other grounds in *People v. Guiuan* (1998) 18 Cal.4th 558, 568, fn. 3). In *Toro*, the court held that a new offense can be added at trial via verdict forms and jury instructions. (*Toro*, at p. 976.) A failure to object to the new offense is regarded as consent to the new offense being added. (*Ibid.*) However, here, the jury instructions only referred to section 136.1, subdivision (b), and the verdict form only referred to section 136.1, subdivision (b)(2). There is no indication that a section 136.1, subdivision (b)(1) charge or a section 136.1, subdivision (a) charge were being added. Accordingly, the failure to object did not constitute consent to new offenses being added, and defendant did not forfeit his claim of error.[2]

### B.    *The Instructional Errors Require Reversal*

Applying the *Chapman* standard, defendant's section 136.1, subdivision (b)(2) conviction must be reversed.

"Section 136.1 basically prohibits four forms of witness intimidation. In subdivision (a), it forbids knowingly and maliciously preventing or dissuading a witness or victim from attending or testifying at trial. Subdivision (b) prohibits preventing or dissuading a witness or victim from (1) reporting the victimization; (2) causing a

---

[2] We note that even if a new offense under section 136.1(a) was added at trial (and it was not), there would still be reversable instructional error because offenses under section 136.1, subdivision (a) require the defendant to have acted "maliciously," and the jury instructions did not include – and the jury did not necessarily find true – this element of the offense.

complaint or similar charge to be sought; and (3) arresting or causing or seeking the arrest of any person in connection with such victimization. All of these crimes are made a felony where the act is accompanied by force or an express or implied threat of violence upon a witness, victim, or the property of any witness, victim, or third person." (*People v. Hallock* (1989) 208 Cal.App.3d 595, 606 (*Hallock*)). Section 136.1, subdivision (b)(2) specifically prohibits attempting to prevent or dissuade any victim of a crime from "[c]ausing a complaint, indictment, information, probation or parole violation to be sought and prosecuted, and assisting in the prosecution thereof." (§ 136.1, subd. (b)(2).)

As applied to the facts of this case, the applicable California Criminal Jury Instruction provides:

> "1. The defendant [tried to prevent or discourage] [B.E.] from cooperating or providing information so that a [complaint] could be sought and prosecuted, and from helping to prosecute that action;
>
> "2. [B.E.] was a [crime victim];
>
> "AND
>
> "3. The defendant knew [he] was [trying to prevent or discourage B.E. from cooperating or providing information so that a complaint could be sought and prosecuted, and from helping to prosecute that action] and intended to do so." (CALCRIM No. 2622.)

However, this instruction was not given. Instead, the instruction given in paragraph 1A regarding preventing or discouraging B.E. from making a report was taken from section 136.1, subdivision (b)(1), a crime with which defendant was not charged. Additionally, the instruction given in paragraph 3 regarding preventing or discouraging B.E. from testifying was taken from section 136.1, subdivision (a), another crime with which defendant was not charged. Given these errors, which are described in more detail below, the jury likely found defendant guilty of violating section 136.1, subdivision (b)(2) without finding that he tried and intended to prevent a charging document from being filed, key elements of the offense with which he was charged.

9.

The People argue that any error was harmless. According to the People, there was either no error at all, or only technical error that does not warrant a reversal. However, the People's arguments of harmless error are not persuasive.

As to the instruction in paragraph 1A, for purposes of this appeal, the People appear to concede, under applicable case law, defendant could not have been found guilty pursuant to this instruction as a matter of law because his conduct occurred after B.E. filed the report.[3] Given this, as well as the fact that the jury was instructed that some of the instructions may not apply, the People argue that the jury would have disregarded paragraph 1A.

The flaw in this argument is that the jury was not instructed that, as a matter of law, defendant could not be found guilty pursuant to paragraph 1A if his conduct occurred after the report was filed. (See *People v. Aledamat* (2019) 8 Cal.5th 1, 7 [" '[J]urors are "well equipped" to sort *factually* valid from invalid theories, but ill equipped to sort *legally* valid from invalid theories' "].) Moreover, the prosecutor did not concede this point at the trial court, and in fact argued to the jury that defendant could be convicted if he tried to prevent or discourage B.E. from making a report even though the evidence showed that defendant called B.E. after B.E. filed the report and defendant had been arrested. Specifically, during her closing argument, the prosecutor argued that "there's multiple options under which the defendant can be found guilty. We have that he tried to prevent or discourage [B.E.] from making a report that she was a victim of a crime or that he tried to prevent or discourage [B.E.] from cooperating or providing information." Additionally, in response to defendant's closing argument that the jury instruction in paragraph 1A did not apply, the prosecutor stated: "Now, I would also like

---

[3] This concession is in accordance with *People v. Fernandez* (2003) 106 Cal.App.4th 943 (*Fernandez*), which held that section 136.1, subdivision (b)(1) "punishes a defendant's pre-arrest efforts to prevent a crime from being reported to the authorities." (*Fernandez*, at p. 950.)

to address briefly the argument made about the … [s]ection 136[, subdivision] (b)(1). The investigation clearly wasn't complete when [defendant] made that phone call. We know that because the victim was subsequently interviewed. The defense did their own investigation. And so we know at that point, even though the complaint had been filed, that the investigation was not done, and he was trying to dissuade her from further cooperating with law enforcement." Thus, the prosecutor repeatedly told the jury that defendant could be convicted based on the erroneous instruction in paragraph 1A.

Finally, in light of the erroneous instruction and the prosecutor's argument as to the paragraph 1A instruction, there was evidence from which the jury could have concluded that defendant tried to dissuade B.E. from making a report to a judge pursuant to this instruction. On the call to B.E. that defendant made after he was arrested, defendant asked B.E. if she was going to court on Tuesday to drop the charges and talk to the judge. When B.E. asked why she had to talk to the judge, defendant told her it was to let the judge know that she was dropping the charges. The jury was not instructed on the definition of a "report." Thus, the jury could have reasonably concluded that defendant was attempting to prevent B.E. from making a report.

Moreover, as to the 1B theory, no evidence was presented to the jury regarding when the first charging document was filed. Thus, there was no evidence that a charging document had not been filed at the time defendant made the phone call to B.E. Further, during closing arguments both parties argued that a charging document *had been* filed at the time defendant made the call. While the parties' assertions on that point were erroneous – the complaint was not filed until May 28, 2019 – there is little reason to believe that the jury found defendant guilty of trying to prevent a charging document from being filed because the date the charging document was filed was not before the jury and the parties agreed that it had already been filed when defendant made the call.[4]

---

[4] In addressing defendant's argument that there was insufficient evidence to support his section 136.1, subdivision (b)(2) conviction, the People argue that a jury

Given the errors in paragraphs 1A and 1B of the jury instructions and the evidence in this case, we are unable to determine whether the jury found defendant guilty pursuant to the instruction in paragraph 1B (which was related to the crime with which he was charged) or paragraph 1A (which was erroneous because defendant was not charged with that offense, and that offense was impossible for defendant to have committed because B.E. had already reported the crime to law enforcement). Therefore, we cannot conclude beyond a reasonable doubt that the error did not contribute to the verdict. Standing alone, this is a sufficient basis to reverse the conviction on count 2.

The People also argue that the inclusion of the word "testifying" in paragraph 3 of instruction is harmless error because it actually made it more difficult for the People to prove their case. According to the People, pursuant to this instruction the jury had to find that defendant attempted to dissuade B.E. not just from cooperating or providing information, but that he did so by attempting to dissuade her from testifying.

However, the People are incorrect. The instruction in paragraph 3 stated that to find defendant guilty, the jury only needed to find that "defendant knew he was preventing or discouraging [B.E.] from testifying and intended to do so." The instruction did not reference paragraph 1B or state that the jury could only find defendant guilty if he intended to prevent or discourage B.E. from causing a charging document to be filed and assisting in the prosecution. Additionally, the instruction in paragraph 3 is the instruction for dissuading a witness from testifying in violation of 136.1, subdivision (a), (CALCRIM No. 2622), a crime with which defendant was not charged.

---

could have inferred from the evidence that a complaint had not been filed at the time defendant made the call to B.E. This argument is not persuasive. No evidence was presented to the jury regarding when the charging document was filed, and the People do not explain why or how a jury would know the general timeline for the filing of charging documents. Moreover, even if the jury could have inferred that a charging document had not yet been filed, under the *Chapman* standard of review, this is insufficient to find harmless error.

The distinction is important because, under the statutory scheme at issue, part I, title 7, chapter 6 of the Penal Code, sections 132 through 140, (1) dissuading a victim from testifying and (2) dissuading a victim from causing a charging document to be filed and assisting in the prosecution are different offenses with different elements.[5] "Efforts to prevent or influence testimony are specifically prohibited by provisions other than section 136.1, subdivision (b)(1). Section 137 forbids a defendant's efforts to change the content of a witness's testimony. (*People v. Womack* [(1995)] 40 Cal.App.4th [926,] 930–931.) Section 136.1, subdivision (a) makes it a crime to '[k]nowingly and maliciously prevent[] or dissuade[] any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law' or to attempt to do the same; i.e., to try to prevent a witness from appearing in court and giving testimony. (§ 136.1, subd. (a)(1) & (2); *Womack*, at p. 931.) Section 138, subdivision (a) penalizes bribes that are intended to dissuade a witness from appearing in court." (*Fernandez*, *supra*, 106 Cal.App.4th at pp. 948–949). "The distinction between the offenses is not merely a semantic one. The Legislature has taken pains to distinguish the various methods of influencing a witness and to establish a range of punishment for those offenses that reflects different levels of culpability." (*Id.* at p. 950.) Like section 136.1,

---

[5] We review issues of statutory construction de novo. (*People v. Gonzales* (2018) 6 Cal.5th 44, 49.) Our goal is to determine the legislative intent of the statute. (*People v. Johnson* (2022) 79 Cal.App.5th 1093, 1108.) "Because the statutory language is generally the most reliable indicator of that intent, we look first at the words themselves, giving them their usual and ordinary meaning." (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1040, overruled on other grounds in *Facebook, Inc. v. Superior Court* (*Touchstone*) (2020) 10 Cal.5th 329, 345, fn. 6.) When the statutory language is unambiguous, its plain meaning controls. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.) We also "generally must 'accord[] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose,' and [the California Supreme Court] ha[s] warned that '[a] construction making some words surplusage is to be avoided.' " (*People v. Valencia* (2017) 3 Cal.5th 347, 357.) Where the language supports more than one reasonable construction, we may look to extrinsic aids, including the legislative history, for additional guidance. (*People v. Ruiz* (2018) 4 Cal.5th 1100, 1105–1106.)

subdivision (b)(1), subdivision (b)(2) does not target efforts to influence or prevent testimony at a proceeding or inquiry authorized by law. Rather, subdivision (b)(2) targets attempts to deter a victim from causing a charging document to be filed and from assisting in the prosecution.

The conclusion that section 136.1, subdivision (b)(2) targets attempts to deter a victim from causing a charging document to be filed *and* from assisting in the prosecution is inconsistent with *People v. Velazquez* (2011) 201 Cal.App.4th 219 (*Velazquez*). The *Velazquez* court held that "[s]ubdivision (b)(2) clearly encompasses more than prearrest efforts to dissuade, inasmuch as it includes attempts to dissuade a victim from causing a complaint or information to be prosecuted *or* assisting in that prosecution." (*Id.* at p. 233, italics added.) Thus, according to the *Velazquez* court, subdivision (b)(2) can be violated by either (1) attempting to prevent or dissuade a victim from causing a charging document to be filed *or* (2) from assisting in the prosecution. However, we agree with the analysis in *Fernandez* discussed above, as well as the analysis in *People v. Reynoza* (2022) 75 Cal.App.5th 181, review granted May 11, 2022, S273797 (*Reynoza*). As the court in *Reynoza* explained, "[t]he plain meaning of the words '[c]ausing a complaint … to be sought and prosecuted' necessarily includes the filing of a complaint. The *Velazquez* court misconstrued the term 'and' to mean 'or', thereby eliminating that required filing element. By passing over the drafters' use of the conjunctive rather than the disjunctive, the court ignored the canon of statutory construction that ' "significance must be given to every word [in a statute] in pursuing the legislative purpose, and the court should avoid a construction that makes some words surplusage." ' " (*Id.* at p. 188.)

Based on the foregoing, the instructional error in paragraph 3 did not make it more difficult for the People to prove their case. Instead, it added an additional, and erroneous, route for the jury to find defendant guilty. The jury may have found that defendant tried and intended to prevent or discourage B.E. from testifying, and not that he tried and

14.

intended to prevent her from causing a charging document to be filed. Even if the jury found defendant guilty under the instruction in paragraph 1B – which we found above to be unlikely because no evidence of when a charging document was filed was presented to the jury and the parties agreed in argument that the complaint had already been filed at the time of the call—the jury was permitted to find defendant guilty without finding true an essential element of the offense – that defendant intended to prevent or discourage B.E. from causing a complaint to be filed. Therefore, we cannot conclude beyond a reasonable doubt that the error in paragraph 3 of instruction 1B did not contribute to the verdict. Standing alone, this is also a sufficient basis to reverse the conviction on count 2.

Overall, given the evidence in this case and the instructional errors regarding the elements of section 136.1, subdivision (b)(2), the jury likely have found defendant guilty without finding that defendant tried and intended to prevent a charging document from being filed, required elements of the offense.[6] Accordingly, we cannot conclude beyond a reasonable doubt that the errors were harmless, and reversal is required.

**C.      *The Court Does Not Address Defendant's Alternative Argument***

Defendant also argues that there was insufficient evidence to support his section 136.1, subdivision (b)(2) conviction because this section only prohibits prearrest conduct. While phrased as a sufficiency of the evidence argument, the question is largely a legal one.

There is a split of authority regarding whether section 136.1, subdivision (b)(2) can be violated by conduct that occurs after a charging document has been filed (see *Reynoza*, *supra*, 75 Cal.App.5th at p. 188; *People v. Brown* (2016) 6 Cal.App.5th 1074, 1082; *Velazquez*, *supra*, 201 Cal.App.4th at pp. 232–233), and the Supreme Court

---

[6] We note that the verdict form did not clarify the issue for the jury. While it refers to dissuading a witness or victim from "[p]rosecution," it does not mention any of the charging documents listed in section 136.1, subdivision (b)(2).

15.

granted review in *Reynoza* to answer this question. While we agree with *Reynoza* that the "and" in subdivision (b)(2) means "and," based on the record in this case and the arguments presented by the parties, defendant's conduct occurred soon after he was arrested and before a charging document was filed. Given this, that the instructional errors require reversal, and that our Supreme Court may provide additional guidance on the issue, we take no other position on whether subdivision (b)(2) can be violated by conduct that occurs after a charging document has been filed.

### DISPOSITION

Defendant does not appeal his conviction on the domestic violence charge or the enhancement, and this conviction stands. Defendant's section 136.1, subdivision (b)(2) conviction is reversed, and defendant's sentence is vacated. As the reversal is predicated on instructional error and not on insufficiency of evidence, the People may choose to retry defendant on the subdivision (b)(2) charge. (*People v. Hernandez* (2003) 30 Cal.4th 1, 10 ["[T]he law is clear that, as a general rule, errors other than insufficiency of evidence do not preclude retrial following reversal of conviction"].) The case is remanded to the trial court for proceedings consistent with this opinion.

POOCHIGIAN, Acting P. J.

WE CONCUR:

DETJEN, J.

SNAUFFER, J.

16.