Filed 6/18/26  P. v. Hernandez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>JOE SAMUEL HERNANDEZ, JR.,<br><br>        Defendant and Appellant. | F088089<br><br>(Super. Ct. No. F21904358)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Alvin M. Harrell III, Judge.

Keith Fox, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Christopher J. Rench and Jessica Trieu-Simerly, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

In 2021, 22-year-old defendant Joe Samuel Hernandez, Jr. was arrested and charged with one count of attempted murder after he shot the driver of a delivery truck from the passenger seat of the car he was riding in. In 2023, a jury convicted defendant of attempted premeditated murder with a firearm enhancement finding, shooting at an occupied vehicle, carrying a loaded firearm in public with a finding defendant was not the registered owner, and assault with a firearm with a firearm enhancement finding. (Pen. Code, §§ 664/187, subd. (a)/12022.53, subd. (c) [count 1], 246 [count 2], 25850, subd. (a)/25850, subd. (c)(6) [count 3], 245, subd. (a)(2)/12022.5, subd. (a) [count 4].)[1] In a bifurcated proceeding, the trial court found the following aggravating sentencing factors true: the offense involved great violence, great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness, and defendant was armed with or used a weapon in the commission of the crime. (Cal. Rules of Court, rule 4.421(a)(1)–(2).)

Defendant was sentenced in 2024. The trial court declined defendant's request to strike the firearm enhancement under section 1385 and sentenced defendant to life with the possibility of parole for attempted murder, with an additional 20 years for the firearm enhancement. The court imposed middle terms for the remaining convictions and stayed the sentences under section 654.

Defendant timely appealed. He claims that the jury's premeditation finding is not supported by substantial evidence, and that CALCRIM No. 601, the pattern instruction on willful, deliberate and premeditated attempted murder, misstated the law by informing jurors he acted with premeditation if he decided to kill before shooting the victim. Defendant also claims the trial court erred when it denied his motion to strike the firearm enhancement under section 1385 because it failed to consider whether dismissing the

---

[1] All further statutory references are to the Penal Code unless otherwise designated.

enhancement would endanger *future* public safety. (*People v. Gonzalez* (2024) 103 Cal.App.5th 215, 230–231 (*Gonzalez*).) If we find defendant forfeited his claim of sentencing error by failing to object, he argues trial counsel rendered ineffective assistance of counsel (IAC).

The People dispute any errors occurred.

We conclude the jury's finding the attempted murder was willful, deliberate and premeditated is supported by substantial evidence, and we reject defendant's claim of instructional error. With respect to defendant's claim of sentencing error under section 1385, we conclude defendant forfeited the claim, as he neither argued the issue nor objected to the trial court's exercise of its sentencing discretion. (*People v. Fruits* (2016) 247 Cal.App.4th 188, 208 (*Fruits*).) Furthermore, on this record, trial counsel's failure to argue the issue or object did not constitute IAC. Accordingly, we affirm the judgment.

## FACTUAL SUMMARY

In June 2021, in the mid-afternoon, victim William A. was driving a furniture delivery truck. He came to a stop at a red traffic light on a busy street. His two coworkers, Alfredo Z. and Isaac C., were sitting next to him on the truck's bench seat and talking to each other. Alfredo noticed William was talking to the passenger in a smaller sedan stopped on the left side of their truck. The two men were yelling or "jibbering" at each other, but Alfredo thought they sounded "cool" or "[s]omewhat" friendly. Then William leaned toward Alfredo and Isaac and said, "[L]ook, he has a gun .…" All three men looked to the left and Alfredo saw the passenger, with a plastic bag over his hand, waving a small revolver around and pointing it upward. Alfredo told William not to put his head out the window, but William said, "[H]e's not even going to shoot it .…"

As the traffic light turned green, Alfredo heard tires burning, and William turned to his left and stuck his head out the window. Alfredo heard what he thought were three

3.

shots and saw William was hit and bleeding from the head.[2]  The car took off and William stepped on the truck's gas pedal, but he was leaning to his right.  Alfredo grabbed the wheel to keep the truck from hitting other cars, told William to press the brake pedal, and put the truck safely in park.

The three men exited the delivery truck and Isaac called 911.  He reported someone shot at them and his friend was bleeding from the head where a bullet grazed him.  He identified the model of the involved car, described it as white with an Army sticker on the rear window, and said it took off after the shooting.

William was transported to the hospital and treated for a one- to two-inch laceration to his right eyebrow.  He had a CT scan, which reflected some shrapnel, but no fractures or damage to the brain.  At trial, William responded he did not remember or did not recall to many of the questions he was asked.  However, when interviewed by police shortly after the shooting, he stated the gun was a smaller revolver and the shooter had the letter "R" tattooed under his eye.  William expressed some fear, but identified the shooter by name and said they had gone to high school together, where there were some issues between them involving a girl.[3]

Following release of the description of the suspect vehicle, a police sergeant quickly located an empty white sedan with the Army sticker parked outside an apartment complex.  After the vehicle had been under surveillance for approximately 10 minutes, two men came out of the complex and approached it.  The shorter man, identified as defendant from a photograph, opened the passenger door and wiped the interior with a yellow cloth while the taller man opened the door on the driver's side.  The men went

---

[2]    At the scene after the shooting, Alfredo told an officer there was one shot, but at trial, he thought there were three because he recalled one hit the window, one hit William, and one hit the sun visor.

[3]    William's statements were introduced through an officer as prior inconsistent statements and the jury viewed the officer's body camera footage.

4.

back inside the apartment complex and then came back out approximately 10 minutes later after a silver car pulled up. At least one of the men was carrying a backpack and they both left in the silver car. Police subsequently effected a vehicle stop of the silver car and detained the female driver and two male passengers, one of whom was defendant.[4]

After the two men were detained, police conducted an in-field showup at the hospital. William said the first suspect "could be the driver." He identified the second suspect, whom an officer identified in court as defendant, as the passenger in the vehicle and the shooter, to a 100 percent certainty.

Officers recovered an empty handgun case from the trunk of the white car. From the silver car, officers recovered a black backpack from the rear passenger seat behind the driver, where defendant had been sitting. Inside the backpack, officers found a cell phone they linked to defendant, an unregistered .22-caliber revolver with two or three live rounds and one spent casing in the cylinder, a .40-caliber semiautomatic "ghost gun," and an extended capacity magazine with 16 live .40-caliber rounds in it. No fingerprint or ballistic evidence was recovered.

## DISCUSSION

### I. Substantial Evidence Claim

Defendant claims that the jury's finding the attempted murder was premeditated is not supported by substantial evidence. Defendant acknowledges the *Anderson* factors are not dispositive but, relying on *Anderson* and *Boatman*, he argues there is no evidence of planning or a motive to kill William, and the manner of the attempted killing does not support a finding of premeditation or deliberation. (*People v. Anderson* (1968) 70 Cal.2d

---

[4]    The female driver and the other male passenger were also charged in connection with the shooting, but by the time of defendant's trial, the driver's case was proceeding separately and the male passenger was deceased.

5.

15, 26–27 (*Anderson*); *People v. Boatman* (2013) 221 Cal.App.4th 1253, 1267–1274 (*Boatman*).)

We conclude the jury's finding is supported by sufficient evidence.

**A.    Standard of Review**

"The Due Process Clause of the Fourteenth Amendment denies States the power to deprive the accused of liberty unless the prosecution proves beyond a reasonable doubt every element of the charged offense" (*Carella v. California* (1989) 491 U.S. 263, 265, citing *In re Winship* (1970) 397 U.S. 358, 364), and the verdict must be supported by substantial evidence (*People v. Zamudio* (2008) 43 Cal.4th 327, 357 (*Zamudio*)).  On appeal, the relevant inquiry governing a challenge to the sufficiency of the evidence "'is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1055 (*Nguyen*).)  "The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*Zamudio, supra*, at p. 357.)

"In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence." (*Zamudio, supra*, 43 Cal.4th at p. 357.)  "'[I]t is the jury, not the appellate court which must be convinced of the defendant's guilt ….'" (*Nguyen, supra*, 61 Cal.4th at pp. 1055–1056.)  "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict" (*Zamudio, supra*, at p. 357), but "speculation, supposition and suspicion are patently insufficient to support an inference of fact" (*People v. Franklin* (2016) 248 Cal.App.4th 938, 951; accord, *People v. Marshall* (1997) 15 Cal.4th 1, 35; *People v. Xiong* (2013) 215 Cal.App.4th 1259, 1268).  However, "reversal [of the judgment] is 'not warranted simply because the

6.

circumstances might also reasonably be reconciled with a contrary finding.'" (*People v. Westerfield* (2019) 6 Cal.5th 632, 713.)

### B. Attempted Premeditated Murder

"An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." (§ 21a.) While murder is an unlawful killing with express or implied malice aforethought (§§ 187, subd. (a), 188; accord, *People v. Rangel* (2016) 62 Cal.4th 1192, 1220), attempted murder requires specific intent to kill, or express malice, "'and the commission of a direct but ineffectual act toward accomplishing the intended killing'" (*People v. Smith* (2005) 37 Cal.4th 733, 739 (*Smith*); accord, *People v. Gonzalez* (2012) 54 Cal.4th 643, 653–654). Express malice is shown when the defendant "'either desires the victim's death, or knows to a substantial certainty that the victim's death will occur.'" (*People v. Houston* (2012) 54 Cal.4th 1186, 1217; accord, *People v. Covarrubias* (2016) 1 Cal.5th 838, 890.)

"For an attempt, the overt act must go beyond mere preparation and show that the killer is putting his or her plan into action; it need not be the last proximate or ultimate step toward commission of the crime or crimes [citation], nor need it satisfy any element of the crime [citation]." (*People v. Superior Court* (*Decker*) (2007) 41 Cal.4th 1, 8; accord, *People v. Garton* (2018) 4 Cal.5th 485, 514.) "[E]vidence of motive is often probative of intent to kill," but it "is not required to establish intent to kill .…" (*Smith, supra*, 37 Cal.4th at p. 741.) Intent "may in many cases be inferred from the defendant's acts and the circumstances of the crime." (*Ibid.*)

Unlike murder, "attempted murder is not divided into degrees, but the sentence can be enhanced if the attempt to kill was committed with premeditation and deliberation." (*People v. Gonzalez, supra*, 54 Cal.4th at p. 654.) More than a specific intent to kill is required to support a finding of deliberation and premeditation. (*People v. Koontz* (2002) 27 Cal.4th 1041, 1080 (*Koontz*).) "'Deliberation' refers to careful weighing of considerations in forming a course of action; 'premeditation' means thought

7.

over in advance." (*Ibid.*) "'The process of premeditation and deliberation does not require any extended period of time. "The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly.…"'" (*Ibid.*)

"In *People v. Anderson* (1968) 70 Cal.2d 15, 26–27, [the Supreme C]ourt reviewed earlier decisions and developed guidelines to aid reviewing courts in assessing the sufficiency of evidence to sustain findings of premeditation and deliberation. [Citation.] [The court] described three categories of evidence recurring in those cases: planning, motive, and manner of killing." (*People v. Halvorsen* (2007) 42 Cal.4th 379, 419–420.) "[H]owever, '[u]nreflective reliance on *Anderson* for a definition of premeditation is inappropriate.'" (*Koontz, supra*, 27 Cal.4th at p. 1081; accord, *People v. Casares* (2016) 62 Cal.4th 808, 824, disapproved on another ground by *People v. Dalton* (2019) 7 Cal.5th 166, 214.) The California Supreme Court recently reiterated, "In the years since *Anderson*, '"we have emphasized that its guidelines are descriptive and neither normative nor exhaustive, and … reviewing courts need not accord them any particular weight."' [Citation.] *Anderson* provides 'a framework to aid in appellate review,' but it does not 'define the elements of first degree murder or alter the substantive law of murder in any way.'" (*People v. Morales* (2020) 10 Cal.5th 76, 89 (*Morales*), quoting *People v. Rivera* (2019) 7 Cal.5th 306, 324 & *People v. Perez* (1992) 2 Cal.4th 1117, 1125; accord, *Casares, supra*, at p. 824; *Halvorsen, supra*, at p. 420.)

**C.      Analysis**

While there is no evidence defendant and William crossed paths that afternoon other than through happenstance, we disagree with defendant's assertion that there is not sufficient evidence to support a reasonable inference of planning or motive. First, the fact that defendant was riding around in a vehicle with a loaded gun at the ready is, in and of itself, evidence he was prepared for a violent encounter. (*People v. Lee* (2011) 51 Cal.4th 620, 636, citing *People Steele* (2002) 27 Cal.4th 1230, 1250; accord, *People v.*

8.

*Salazar* (2016) 63 Cal.4th 214, 245 (*Salazar*); *Koontz, supra*, 27 Cal.4th at pp. 1081–1082.) Second, "'[o]ne of the aspects of "motive" evidence is the prior relationship of the defendant to the victim.'" (*People v. Alvarez* (2025) 18 Cal.5th 387, 471 (*Alvarez*).) That defendant and William encountered one another by chance that day did not preclude the jury from inferring a motive to shoot William.

Evidence that the two men were in high school together several years earlier and had some negative history involving a girl was admitted through an officer as a prior inconsistent statement (Evid. Code, § 1235; *People v. Mataele* (2022) 13 Cal.5th 372, 413), and the two exchanged words prior to the shooting. Although Alfredo initially thought it sounded like the two men were cool, he testified they only sounded "[s]omewhat" friendly and once he saw the gun, he concluded they were not friends. This was sufficient evidence from which the jury could reasonably infer animus existed between the two, despite the chance nature of the encounter at the traffic light. Moreover, ""'[t]he law does not require … a 'rational" motive for killing"'" (*People v. Pettigrew* (2021) 62 Cal.App.5th 477, 495, quoting *People v. Jackson* (1989) 49 Cal.3d 1170, 1200), and "'the incomprehensibility of the motive does not mean that the jury could not reasonably infer that the defendant entertained and acted on it'" (*Alvarez, supra*, 18 Cal.5th at p. 472, quoting *People v. Pensinger* (1991) 52 Cal.3d 1210, 1238; accord, *People v. Whisenhunt* (2008) 44 Cal.4th 174, 202).

With respect to the third *Anderson* factor, manner of killing or attempted killing, "a close-range shooting without any provocation … or evidence of a struggle … demonstrates premeditation and deliberation." (*People v. Marks* (2003) 31 Cal.4th 197, 230; accord, *People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 295.) In this instance, defendant and William were somewhere between six and 10 feet apart when defendant, sitting lower in the passenger seat of a car, pointed the gun up at the delivery truck and, when the traffic light turned green, fired at William's head as the car took off, shattering the truck's window glass and grazing William's eyebrow. That the shooting was an

9.

utterly senseless act of violence does not shield defendant from a finding it was willful, deliberate and premeditated. (See *People v. Rand* (1995) 37 Cal.App.4th 999, 1001–1002 ["[t]he law does not require that an action be planned for any great period of time in advance," and shooting at people believed to be rival gang members from a moving vehicle is sufficient to evidence premeditation and deliberation]; accord, *People v. Sanchez* (2001) 26 Cal.4th 834, 849.)

The *Anderson* factors "'are not a sine qua non … nor are they exclusive'" (*Koontz, supra*, 27 Cal.4th at p. 1081), but in this case, there is evidence to support all three factors, notwithstanding defendant's contrary argument. "The substantial evidence standard 'gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" (*People v. Mumin* (2023) 15 Cal.5th 176, 202.) "'Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge [in a court trial] or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.'" (*Ibid.*) "[T]he jury has wide latitude to believe or disbelieve witnesses, or even specific portions of their testimony, as it sees fit." (*In re Lopez* (2023) 14 Cal.5th 562, 591.)

We find *Boatman*, on which defendant leans for support, readily distinguishable. In that case, the defendant shot and killed his girlfriend, but claimed it was accidental. (*Boatman, supra*, 221 Cal.App.4th at p. 1257.) The Court of Appeal concluded the evidence was insufficient to support the jury's finding of deliberation and premeditation, and it reduced the defendant's murder conviction from first degree to second degree. (*Ibid.*)

There was evidence that the defendant and his girlfriend, who were in a bedroom when the shooting occurred, argued prior to the shooting. (*Boatman, supra*, 221 Cal.App.4th at p. 1258.) Afterward, defendant was "horrified and distraught .…" (*Id.* at

p. 1267.) He could be heard in the background of the 911 call crying and repeating, "'[n]oooo,' '[b]aby,' and '[b]aby are you alive, baby'" (*id.* at p. 1261); he told responding police to call an ambulance (*id.* at p. 1258); and he cried during the trip to the police station, inquired about his girlfriend, and expressed that he could not lose her and would do anything for her (*id.* at p. 1259).

In reviewing the evidence, the court stated, "Although [the defendant's] statements regarding the shooting were inconsistent in significant respects, there is nothing in any of his statements to indicate that he considered shooting [her] beforehand or carefully weighed considerations for and against killing her." (*Boatman, supra*, 221 Cal.App.4th at p. 1265.) The court then considered the circumstantial evidence, finding, "[t]he present case lacks any planning evidence whatsoever," and "[t]here is little or no relevant motive evidence here." (*Id.* at p. 1267.) As to the manner of killing, the court acknowledged that the defendant shot his girlfriend in the face, but observed, "Even when manner of killing evidence is strong, cases in which findings of premeditation and deliberation are upheld typically involve planning and motive evidence as well." (*Id.* at p. 1268.)

Ultimately, the court held, "A first degree murder conviction premised upon premeditation and deliberation requires more than a showing of the intent to kill; it requires evidence from which reasonable jurors can infer that the killing is the result of the defendant's preexisting thought and reflection. [Citations.] Here, viewing the evidence in the entire record in the light most favorable to the prosecution, we conclude that there is ample evidence to support the jury's verdict of murder, but insufficient evidence to support the finding that [the] defendant killed [his girlfriend] with premeditation and deliberation. We will therefore reduce the conviction to second degree murder." (*Boatman, supra*, 221 Cal.App.4th at p. 1274.) Critical to the court's view of the evidence was its recognition that "[a]lthough the jury could refuse to believe [the defendant's] testimony, such disbelief cannot support an inference 'that [the] defendant

11.

did that which he denied doing.'" (*Id.* at p. 1267, quoting *People v. Velazquez* (2011) 201 Cal.App.4th 219, 231, disapproved on another ground in *People v. Reynoza* (2024) 15 Cal.5th 982, 1013, fn. 22.)

In contrast with *Boatman*, where the only witnesses to the shooting were the defendant and the victim who was killed, the jury here was apprised of the circumstances surrounding the shooting through Alfredo's testimony and William's statements to police. There is no evidence that the shooting was planned well in advance or that William was the target from the very outset, but, as discussed, defendant was riding around in a car with a loaded gun, he and William had a negative history, they exchanged words when they encountered one another, and defendant waved the gun around and pointed it up at the truck. After the light turned green, William was shot in the forehead as the vehicle defendant was riding in took off. There is no evidence of any provocation and in addition to the aforementioned circumstances surrounding the shooting, the prosecution introduced evidence that it would have been difficult for the revolver to fire unexpectedly because "it would take a considerable amount of force to be able to throw the hammer forward," although it was possible the gun could discharge accidentally if the hammer was cocked and the gun was dropped or was hit with something.

William's head was only grazed by the bullet, but William's good fortune in this regard does not relieve defendant of the consequences of firing a gun at his head from close range. Further, in contrast with the distraught defendant in *Boatman*, defendant fled the scene after the shooting; subsequently returned to the car parked on the street and wiped the interior of the door on the passenger side with a cloth; and then left in a different vehicle, still in possession of a revolver with a spent casing in the cylinder.

These events are materially distinguishable from the circumstances underlying the shooting in *Boatman*, and, for the reasons discussed, the evidence amply supports the jury's conclusion that the shooting """"occurred as the result of preexisting thought and reflection rather than unconsidered or rash impulse."""" (*Morales, supra*, 10 Cal.5th at

p. 88.)  Accordingly, we reject defendant's claim that the jury's finding of willfulness, deliberation and premeditation is not supported by substantial evidence.

## II.    Instructional Error

### A.    CALCRIM No. 601

Next, CALCRIM No. 601, the pattern instruction for attempted murder that is willful, deliberate and premeditated, provides:

> "If you find the defendant guilty of attempted murder [under Count _____], you must then decide whether the People have proved the additional allegation that the attempted murder was done willfully, and with deliberation and premeditation.

> "(The defendant/_____ <insert name or description of principal if not defendant>) acted willfully if (he/she) intended to kill when (he/she) acted.  (The defendant/_____ <insert name or description of principal if not defendant>) deliberated if (he/she) carefully weighed the considerations for and against (his/her) choice and, knowing the consequences, decided to kill.  (*The defendant/_____ <insert name or description of principal if not defendant>*) *acted with premeditation if* (*he/she*) *decided to kill before completing the act*[*s*] *of attempted murder*.

> "[The attempted murder was done willfully and with deliberation and premeditation if either the defendant or _____ <insert name or description of principal> or both of them acted with that state of mind.

> "The length of time the person spends considering whether to kill does not alone determine whether the attempted killing is deliberate and premeditated.  The amount of time required for deliberation and premeditation may vary from person to person and according to the circumstances.  A decision to kill made rashly, impulsively, or without careful consideration of the choice and its consequences is not deliberate and premeditated.  On the other hand, a cold, calculated decision to kill can be reached quickly.  The test is the extent of the reflection, not the length of time.

> "The People have the burden of proving this allegation beyond a reasonable doubt.  If the People have not met this burden, you must find that this allegation has not been proved."  (Italics added and omitted, boldface omitted.)

13.

Based on the portion of CALCRIM No. 601 we have italicized, defendant argues that the instruction permitted the jury to find premeditation so long as he intended to kill prior to shooting William. This argument, however, depends on viewing a single sentence from the instruction in isolation rather than in the context of the instruction as a whole. As discussed below, CALCRIM No. 601 is an accurate statement of the law, and we reject defendant's claim of instructional error.[5]

## B.      Standard of Review

We review allegations of instructional error de novo. (*People v. Waidla* (2000) 22 Cal.4th 690, 733; *People v. Martin* (2000) 78 Cal.App.4th 1107, 1111.) "[I]nstructions are not considered in isolation. Whether instructions are correct and adequate is determined by consideration of the entire charge to the jury" (*People v. Holt* (1997) 15 Cal.4th 619, 677; accord, *People v. Lemcke* (2021) 11 Cal.5th 644, 655), and jurors are presumed to have understood and followed the trial court's jury instructions (*People v. Thomas* (2023) 14 Cal.5th 327, 382 (*Thomas*); *People v. Sandoval* (2015) 62 Cal.4th 394, 422 (*Sandoval*)).

Generally, we evaluate claims of instructional error under *Watson*,[6] which provides that "'an error [under state law is] harmless unless it is "reasonably probable" the outcome would have been different in the absence of the error. [Citation.] As a general matter, this test applies to ""'incorrect, ambiguous, conflicting, or wrongly omitted instructions that do not amount to federal constitutional error.'"""" *(People v. Schuller* (2023) 15 Cal.5th 237, 251.) However, we evaluate errors of federal

---

[5]      The parties disagree whether defendant's failure to object forfeits his claim of instructional error, as the People argue. The "failure to object to instructional error will not result in forfeiture if the substantial rights of the defendant are affected." (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.) Because defendant's claim is premised on the alleged misinstruction on an element of the charge, which is constitutional error, we reach his claim notwithstanding his failure to object.

[6]      *People v. Watson* (1956) 46 Cal.2d 818.

constitutional magnitude under *Chapman*,[7] which "'requires reversal unless the error is "harmless beyond a reasonable doubt."'" (*Schuller, supra*, at p. 251.) "*Chapman* review applies to instructional errors that 'misdescribe[]' [citation] an element of the charged offense or are otherwise 'incomplete and misleading' [citation] with respect to the findings necessary to prove an element of the offense. [Citation.] The key inquiry is whether the instruction operated to 'preclude[] the jury from making a finding' [citation] on any fact necessary to establish an element of the offense." (*Ibid.*)

### C. Analysis

Defendant relies on the California Supreme Court's decision in *Bender* to support his argument that CALCRIM No. 601 misstates the law, thereby misleading the jury. (*People v. Bender* (1945) 27 Cal.2d 164, 181–182 (*Bender*).) In *Bender*, however, the words "'deliberate'" and "'premeditate'" were not defined for the jury, which was instead instructed only that "deliberation and premeditation required 'no appreciable space of time between the intention to kill and the act of killing—they may be as instantaneous as successive thoughts of the mind'; that a man 'may do a thing … deliberately … from a moment's reflection as well as after pondering over the subject for a month or year'; that he 'can premeditate … the moment he conceives the purpose, as well as if the act were the result of long preconcert or preparation.'" (*Id.* at pp. 183–184.) The court explained, "The words 'deliberate' and 'premeditate,' …, have clearly defined and commonly understood meanings. In view of such commonly understood meanings it might not be necessary, at least in the absence of a request therefor, for the trial court to instruct the jury at all on the significations of those words, *but when it does undertake to define or describe their significativeness any definition or description given should be fair and complete.*" (*Id.* at p. 184, italics added.)

---

[7] *Chapman v. California* (1967) 386 U.S. 18.

15.

The terms "willfully," "deliberated," and "premeditation" are properly defined in CALCRIM No. 601 (*People v. Gonzalez, supra*, 54 Cal.4th at p. 661), and the instruction is not, as in *Bender*, incomplete such that the jury was "misled into thinking that an act can at the same time be hasty, hurried, and deliberate, or impulsive, unstudied, and premeditated" (*Bender, supra*, 27 Cal.2d at p. 185). To the contrary, CALCRIM No. 601 expressly instructs the jury, "The length of time the person spends considering whether to kill does not alone determine whether the attempted killing is deliberate and premeditated. The amount of time required for deliberation and premeditation may vary from person to person and according to the circumstances. A decision to kill made rashly, impulsively, or without careful consideration of the choice and its consequences is not deliberate and premeditated. On the other hand, a cold, calculated decision to kill can be reached quickly. The test is the extent of the reflection, not the length of time."

Defendant's argument parses a sentence from the instruction and, on that basis, asserts error. We must view that sentence, however, in the context of the instruction as a whole, and we presume the jury understood and followed the instruction. (*Thomas, supra*, 14 Cal.5th at p. 382; *Sandoval, supra*, 62 Cal.4th at p. 422.) So viewed, CALCRIM No. 601 does not mislead the jury on the required elements of willful, deliberate, and premeditated attempted murder by permitting it to make the finding based on nothing more than defendant's decision to kill prior to shooting William. Defendant fails to persuade us that the instruction, viewed in its entirety, misled the jury or suffered from the defect at issue in *Bender*. Accordingly, we reject the claim of instructional error.

## III.    Sentencing Error

### A.    Summary of Claim

Finally, section 1385 permits the trial court to dismiss an enhancement in furtherance of justice. (*Id.*, subd. (a).) As amended by Senate Bill No. 81 (2021–2022 Reg. Sess.), effective January 1, 2022, section 1385, subdivision (c), provides,

16.

"Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute" (*id.*, subd. (c)(1)), and "[i]n exercising its discretion under this subdivision, the court *shall* consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, *unless* the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others" (*id.*, subd. (c)(2), italics added).

In *Gonzalez*, the defendant claimed several mitigating circumstances applied, and the Court of Appeal found "the trial court erred because it considered only whether [the defendant] *currently* posed a danger to the public when assessing if a dismissal of the firearm enhancement would 'endanger public safety.'" (*Gonzalez, supra*, 103 Cal.App.5th at p. 230, quoting § 1385, subd. (c)(2).) The court explained, "Although the current dangerousness of the defendant is an appropriate factor to consider, as it will have some bearing on whether dismissing the enhancement would endanger the public, a crucial part of the inquiry is how the dismissal of the enhancement will impact the length of the defendant's sentence. A currently dangerous defendant who will be released from prison within a short timeframe might be found by the trial court to pose a greater danger to the public than a defendant who is currently dangerous but who has no prospect of release from prison until he is elderly." (*Gonzalez, supra*, at p. 228.)

In this case, defendant claims that two enumerated mitigating circumstances apply: "[m]ultiple enhancements are alleged in a single case" and "application of an enhancement could result in a sentence of over 20 years."[8] (§ 1385, subd. (c)(2)(B)–(C).)

---

[8] Recently, in *Torres*, the Third District Court of Appeal interpreted section 1385, subdivision (c)(2)(C), and concluded, "A sentence exceeding 20 years could *result* from an

17.

Defendant argues that, as in *Gonzalez*, the trial court denied his request for relief under section 1385 without assessing the future danger to public safety should the 20-year firearm enhancement attached to his indeterminate life sentence be stricken. (*Gonzalez, supra*, 103 Cal.App.5th at p. 231.) However, in the trial court, defendant did not argue he presented no future danger to public safety should the enhancement be stricken, he did not object to the sentence pronounced, and he did not ask the trial court to make a more specific record.

Recognizing this, defendant argues that his general request for relief from the enhancement under section 1385 was sufficient to preserve his claim for relief and it would have been futile to object. For the reasons that follow, we do not agree.

### B. Forfeiture Doctrine

"'A party in a criminal case may not, on appeal, raise "claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices" if the party did not object to the sentence at trial. [Citation.] The rule applies to "cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons ...."'" (*People v. Scott* (2015) 61 Cal.4th 363, 406.) "Strong policy reasons support this rule: 'It is both unfair and inefficient to permit a claim of error on

enhancement where a sentence of that length arises as a consequence of the enhancement. (See Merriam-Webster's Collegiate Dictionary (11th ed. 2006) p. 1063, col. 1 [defining 'result'].) Thus, the effect of applying the enhancement itself leads to a sentence exceeding 20 years. The word result denotes a causal relationship between the enhancement and a sentence exceeding 20 years. Accordingly, this subdivision concerns 'enhancements increasing [a] sentence above 20 years.'" (*People v. Torres* (2025) 113 Cal.App.5th 88, 93.) The court concluded that because the defendant's sentence was 25 years to life, it exceeded 20 years without the enhancement and that mitigating circumstance did not apply. (*Ibid.*) In this case, defendant's sentence for attempted murder is life with the possibility of parole after serving at least seven years. (§§ 664, subd. (a), 189, subd. (a), 3046, subd. (a)(1).) The decision in *Torres* was issued prior to the filing of the People's respondent's brief, but neither party addressed the decision, and the People do not argue there were no applicable mitigating circumstances.

appeal that, if timely brought to the attention of the trial court, could have been easily corrected or avoided. [Citations.]' [Citation.] "'"'"The law casts upon the party the duty of looking after his legal rights and of calling the judge's attention to any infringement of them. If any other rule were to obtain, the party would in most cases be careful to be silent as to his objections until it would be too late to obviate them, and the result would be that few judgments would stand the test of an appeal."'"'"' (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114; accord, *Salazar, supra*, 63 Cal.4th at pp. 239–240; *People v. French* (2008) 43 Cal.4th 36, 46.)

"'[D]iscretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue.'" (*In re Sheena K.* (2007) 40 Cal.4th 875, 887–888, fn. 7.) Absent a substantive change in the law that applies retroactively (e.g., *People v. Salazar* (2023) 15 Cal.5th 416, 431–432; *People v. Stamps* (2020) 9 Cal.5th 685, 698–699), or an extenuating circumstance such as the futility of objecting under the then-governing substantive law (e.g., *People v. Perez* (2020) 9 Cal.5th 1, 7–8; *People v. Brooks* (2017) 3 Cal.5th 1, 92), neither of which is at issue here, the policy reasons underlying the forfeiture doctrine fully support its application where a defendant remains silent in the trial court when sentenced and then seeks to obtain appellate relief based on an asserted sentencing error that could have been raised at the time of sentencing.

Defendant acknowledges he did not object or make the argument he now seeks to pursue on appeal, but he asserts that his request the court stay the firearm enhancement sufficed to preserve the issue for appeal and that it would have been futile to object. We are not persuaded. An undeveloped request for relief under section 1385 does not serve to preserve defendant's present claim that the court abused its sentencing discretion as to a finding on public safety, necessitating remand for resentencing. Had defendant objected to his sentence on the ground he raises on appeal, the very error he now asserts entitles him to reversal could have been corrected or the record otherwise developed as to the issue. Furthermore, there is no support in the record for defendant's claim that it

19.

would have been futile for him to object. The court was not intemperate, it provided the parties with the opportunity to argue sentencing issues, and defendant declined the offer to address the court.

"[A] party cannot argue on appeal that the trial court erred in failing to conduct an analysis it was not asked to conduct" (*Fruits, supra*, 247 Cal.App.4th at p. 208, fn. omitted; accord, *People v. Fuiava* (2012) 53 Cal.4th 622, 655), and strong policy reasons support application of the rule in the situation presented in this case (*People v. Stowell, supra*, 31 Cal.4th at p. 1114). Furthermore, "[a]bsent evidence to the contrary, we presume that the trial court knew the law and followed it." (*People v. Ramirez* (2021) 10 Cal.5th 983, 1042.) Thus, "we presume that a judgment or order of the trial court is correct, '"[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown."'" (*People v. Giordano* (2007) 42 Cal.4th 644, 666.)

In this instance, the relevant amendment to section 1385 had been in effect for more than two years and there is no indication the trial court misunderstood the scope of its sentencing discretion. Defendant neither made the argument nor objected on the ground now advanced on appeal as supporting reversible error. Had he done so, the trial court could have addressed the issue. Accordingly, we find defendant forfeited review of his claim that the court erred by failing to consider future danger to public safety.

### C. IAC

Anticipating possible application of the forfeiture doctrine to his claim, defendant argues trial counsel was ineffective for not raising the issue. We are unpersuaded.

To prevail on a constitutional claim of IAC, a defendant "'must satisfy a two-pronged showing: that counsel's performance was deficient, and that [he] was prejudiced, that is, there is a reasonable probability the outcome would have been different were it not for the deficient performance.'" (*People v. Woodruff* (2018) 5 Cal.5th 697, 736 (*Woodruff*), quoting *People v. Alexander* (2010) 49 Cal.4th 846, 888;

20.

accord, *Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).) "'[T]he standard for judging counsel's representation is a most deferential one.' (*Harrington v. Richter* (2011) 562 U.S. 86, 105 (*Richter*).) We 'must indulge a "strong presumption" that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight.' (*Bell v. Cone* (2002) 535 U.S. 685, 702.) 'Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.' (*Richter,* at p. 105.)" (*In re Long* (2020) 10 Cal.5th 764, 773.)

Therefore, a "defendant's burden [is] 'difficult to carry on direct appeal,' as a reviewing court will reverse a conviction based on [IAC] on direct appeal only if there is affirmative evidence that counsel had ""'no rational tactical purpose'"" for an action or omission." (*People v. Mickel* (2016) 2 Cal.5th 181, 198, quoting *People v. Lucas* (1995) 12 Cal.4th 415, 437.) As stated, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (*Strickland, supra*, 466 U.S. at p. 690; accord, *People v. Barrett* (2012) 54 Cal.4th 1081, 1105 (*Barrett*).)

Trial counsel requested the court strike the firearm enhancement in the interest of justice given defendant's age and lack of criminal history, but did not argue there was a mitigating circumstance and dismissal of the enhancement would not endanger public safety. In view of the trial court's familiarity with the facts of the case and the parties; the inexplicable nature of the crime; defendant's conduct in jail, which included 14 fights by the time of the sentencing hearing; and the court's express consideration of mitigating factors, which included defendant's youth and his insignificant prior criminal record, aggravating factors, and public safety considerations, defense counsel may well have reasonably determined that either objecting to the exercise of the court's sentencing discretion or requesting a more specific sentencing record as to the issue of public safety

21.

would not have been fruitful. "'[D]eciding whether to object is inherently tactical, and the failure to object will rarely establish [IAC].'" (*People v. Carrasco* (2014) 59 Cal.4th 924, 985, quoting *People v. Hillhouse* (2002) 27 Cal.4th 469, 502.) Moreover, "[c]ounsel is not ineffective for failing to make frivolous or futile motions" (*People v. Thompson* (2010) 49 Cal.4th 79, 122; accord, *People v. Bell* (2019) 7 Cal.5th 70, 126–127), and counsel may, in the exercise of his or her professional judgment, determine that an objection would not result in a more favorable determination for his or her client (*Strickland, supra*, 466 U.S. at p. 690; accord, *Barrett, supra*, 54 Cal.4th at p. 1105).

In addition, there is no reasonable probability of a more favorable outcome had it not been for the asserted error. (*Woodruff, supra*, 5 Cal.5th at p. 739; see *Harrington v. Richter* (2011) 562 U.S. 86, 112 ["[t]he likelihood of a different result must be substantial, not just conceivable"].) Given the trial court's recognition of the amendment to section 1385, its consideration of multiple relevant factors in this case, and its mindfulness of public safety, an objection or a request that a more specific record be made would almost certainly have resulted not in a finding more favorable to defendant but in that more specific record. This is not a case where the record would not support a finding that dismissal would endanger public safety and it is not a case where there were no countervailing factors to "'neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.'" (*People v. Walker* (2024) 16 Cal.5th 1024, 1036.) "[I]f the court does not conclude that dismissal would endanger public safety, then mitigating circumstances strongly favor dismissing the enhancement. But ultimately, the court must determine whether dismissal is in furtherance of justice. This means that, absent a danger to public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of

justice.'" (*Ibid.*)  Accordingly, we find no error and no prejudice, which forecloses defendant's IAC claim.

## DISPOSITION

The judgment is affirmed.


MEEHAN, J.

WE CONCUR:


LEVY, Acting P. J.


DETJEN, J.

23.